ALEXANDER McKENZIE *vs.* LINNEUS CHEETHAM.

Androscoggin.     Opinion June 1, 1891.

*Landlord and Tenant. Unsafe Premises. Negligence. Implied Invitation.*

One who visits a dwelling-house on the express or implied invitation of the tenant at will cannot be deemed as present therein on the implied invitation of the landlord.

ON EXCEPTIONS.

This was an action on the case in which the plaintiff declared as follows:

"For that the said defendant, at said Lewiston, on the 10th day of January, 1889, was the owner of a certain building situated on the easterly side of Lisbon Street, in said Lewiston, and numbered 292; that a certain tenement in said building was then and there let by the defendant to one Sampson, who occupied the same as a dwelling-house; that said tenement was up-stairs, and the way of ingress and egress to and from the same was over a short flight of stairs, with a short flight of stairs joining a second flight of stairs, with a short wooden landing between said stairs; that said stairway and landing were provided by said defendant as a means of ingress and egress as aforesaid for said tenant and for those lawfully going in and out of said tenement; that said stairways and landing were under his control and charge, and that he was bound to keep the same in a safe condition for the purposes aforesaid; that wholly unmindful of his duty as aforesaid, the defendant neglected to keep said landing in safe and suitable repair, and negligently allowed the timbers and boards of the same to become rotten and unsafe to pass over as aforesaid; that the said landing at the time of the aforesaid letting was rotten, unsafe and danger-

ous to pass as aforesaid, and was then and there a nuisance; that the plaintiff on the 10th day of January aforesaid, in the evening, was lawfully at said building in the tenement occupied by said Sampson as a guest of said Sampson, that on leaving he was obliged to go over said stairways and landing and then and there undertook to do so; that while going down from the upper stairway upon the landing between said stairways, being wholly ignorant of the dangerous condition of said landing and wholly unable to ascertain its dangerous condition by the exercise of due care and caution, and being then and there in the exercise of due care and caution, by the breaking of said landing was suddenly precipitated downwards, striking against the flooring and timbers of said landing and other hard objects, and thereby received severe bruises upon his hip and thigh and at the lower extremity of his spine, together with severe internal injuries, . . . and the plaintiff further says that said injuries were caused by the negligence of said defendant as aforesaid."

The evidence tended to show that the tenement was let to Sampson on the 24th day of November, 1888, as a tenant at will, and was occupied by said tenant as a dwelling-house from that time forward; that there was no agreement between the defendant and Sampson as to the making of any repairs on said tenement after the letting, except such as it was conceded were made by him; that there were no other tenants occupying said premises and having occasion to use said stairway, and that said stairway was the only means of access to and from said tenement and defendant claimed it was under the exclusive control of said tenant and a part of the tenement hired by him; that said defendant occupied the store under said tenement, as a grocery store, that the stairway and landing led up on the outside of the building to the flat roof of the ell over the store, and thence by a walk along the roof of this ell to the outer door leading into the tenement in question, and that the roof of the ell was used by the tenant for various purposes; that the tenement in question had been unoccupied for a period of about a year prior to the letting to Sampson, and that the landlord had owned the building for many years; and the plaintiff claimed that the

landing was a nuisance and was defective and dangerous at the time of the letting to Sampson, on November 24th, and introduced evidence tending to show such condition; and that the plaintiff with his wife and child were making a friendly social call on the Sampson family in the evening of January 10, and while leaving said tenement, and in the exercise of due care stepped on the landing of said stairs, which broke by reason of its rottenness, and the plaintiff was thereby thrown to the ground and injured.

The presiding justice in order to give progress to the case upon the question of damages ruled *pro forma*, as matter of law, that under the facts, as developed by the evidence, the defendant impliedly, at least, invited the plaintiff to pass over the premises on the occasion of his injury,— that there was an implied invitation.

To this ruling and instruction, the defendant excepted. The jury returned a verdict for the plaintiff, and assessed the damages at two hundred and fifty dollars.

*White and Carter*, for defendant.

There is no allegation of knowledge on the part of the landlord of the alleged defective and dangerous condition of the stairway, nor was there any evidence of knowledge on his part as to its condition at the time of letting.

The case distinctly discloses that there was no agreement on the part of the landlord to make repairs. It was a case of ordinary letting, the tenant taking the premises as they were.

This plaintiff was a mere guest of the tenant, and was upon the premises making a friendly and social call upon the Sampsons. He was not there at the request of the landlord.

*Savage and Oakes*, for plaintiff.

There attaches to every dwelling-house, let for that purpose, an implied invitation to all persons to visit it in the usual manner for social calls or for business. The tenant or any member of his family would have been able to recover against

the defendant for injuries resulting from any such concealed danger. *Cowen* v. *Sunderland*, 145 Mass. 364.

If, on the other hand, the plaintiff was a stranger in the eyes of the law, two questions are involved : whether the liability of one who erects a nuisance continues after he demises the premises ; and if so, in favor of what parties. In case of an injury to a stranger by the defective repair of premises let to a tenant, the landlord is·liable in case of his misfeasance ; as for instance, where. he lets premises in a ruinous condition. *Nelson* v. *Liverpool*, L. R. 2 C. P. Div. 311.

Where an owner of land demises it with a nuisance upon it, he is presumed to authorize its continuance by putting it in the power of another person to continue it, and he is liable to a third person subsequently injured thereby, notwithstanding the demise. *Clancy* v. *Byrne*, 56 N. Y. 134; *Waggoner* v. *Jermaine*, 3 Denio, 306 ; *Swords* v. *Edgar*, 59 N. Y. 37 ; *House* v. *Metcalf*, 27 Conn. 631 ; *McAlpin* v. *Powell*, 70 N. Y. 126 ; note to *Todd* v. *Flight*, 9 C. B. (N. S.) 390 ; *Dalay* v. *Savage*, 145 Mass. 40.

In the last case, the court says "the reason of the rule that, if a landlord lets premises in a condition which is dangerous to the public, or with a nuisance upon them, he is liable to strangers for injuries suffered therefrom, is that by the letting he has authorized the continuance of the nuisance." The court also say in the same case "that it seems to be settled that, if the landlord lets premises abutting upon the way which are from their condition or construction dangerous for persons lawfully using the way, he is liable to such persons for injuries suffered thereupon, although the premises are those occupied by a tenant." In that case, neither the landlord nor the tenant were liable to each other for keeping the coal-hole in repair, but it was defective when the demise was made, and the plaintiff, in the exercise of due care, fell into it.

The plaintiff was a stranger. He was not an inmate of the house. He neither ate nor slept there. He had no contract relations to the dwelling-house. Was only a casual visitor for an evening ; only a guest for an hour. In modern society, social calls are so frequent

that they must be recognized by the law. They are so common and so universal that people, who let houses, must be understood to let them with an expectation that they, and the approaches to them, shall be used among other things for the purpose of making friendly, social calls.

If plaintiff was a stranger and in the exercise of a lawful right, he was there in connection with a use for which the house was rented, and not as a mere licensee. Had the defendant rented to the tenant a store fronting upon the street, and had the approaches to the store been rotten and defective, so as to constitute a nuisance, and had any person gone into the store over such an approach, and been injured by its defective or dangerous condition, the landlord would undoubtedly have been liable; because, by letting a store or shop with approaches thereto he gives an invitation to the public to visit that store or shop over those approaches, for the purpose of business. *Campbell* v. *Portland Sugar Co.* 62 Maine, 562.

But the courts have never drawn any line between the purpose of business and the purpose of pleasure; between barter or gain, and social calls. One is just as lawful a purpose as the other. To go to the store or shop for business purposes, of course, accords with the design for which the store or shop was rented. To go to a dwelling-house rented, with the approaches rented with it for social purposes accords equally well for the purposes for which that dwelling-house was rented. The use in either case is one which grows out of the demise of the property. So that a stranger, approaching either the store or the house for the purpose of visiting it for business or pleasure, is not a mere licensee; but is there upon the implied invitation contained in the use to which the building is put.

In *Sweeny* v. *O. C. R. R. Co.* 10 Allen, 373, the court says, "the gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure and for motives to which no act or sign of the owner or occupant contributed; but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers. . . . That it was in accordance with the intention

and design with which the way or place, was adapted and prepared or allowed to be so used. A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability, but if he directly or by implication induces persons to enter on or pass over his premises, he thereby assumes an obligation that they are in a safe condition and suitable for such use."

The defendant is liable because of a breach of duty. To whom did he owe that duty? He rented a house. The only approaches to it were in such dangerous condition as to constitute a nuisance, He knew it was to be used by the tenant and by any persons who might lawfully visit the tenant. His duty was to repair the same, not only for his tenant's use, but for any others who might lawfully have occasion to use the same.

VIRGIN, J. Action on the case by a guest of the sole tenant of a second-story tenement, occupied as a dwelling-house, against the landlord to recover damages for a personal injury caused by the defective landing of a stairway which was the only means of ingress and egress to and from the tenement.

The tenancy commenced in October, 1888. On the evening of January, 10, following, the plaintiff made a social call on the tenant; and when in the act of leaving, he reached the landing it fell and caused the injury for which damages are sought.

The foundation of the action is alleged negligence on the part of the defendant; that he did or omitted to do an act in violation of a legal duty or obligation which he owed the plaintiff and consequent damages.

In the purchase of real as well as of personal estate, parties make their own contracts which the law construes and enforces. When one is negotiating for the lease of a dwelling-house the same as when bargaining for a personal chattel, it is his privilege to inspect and ascertain for himself its actual quality and conditions; and the parties make such express agreements relating thereto as they think fit. If the lessee, instead of exacting from the lessor any warranty of its present or future state of repair, elects to rely upon his own judgment, the law in the absence of

any fraud or concealment on the part of the lessor, leaves the lessee to the operation of the maxim *caveat emptor* and he takes the premises as he finds them for better or worse. *Hill* v. *Wood-man*, 14 Maine, 38, 42; *Gregor* v. *Cady*, 82 Maine, 131; *Keates* v. *Cadogan*, 10 C. B. (70 E. C. L.) 591. For the mere letting, without additional stipulations by the lessor, simply implies that he holds the title and that the lessee shall quietly enjoy the use and occupation during his tenancy; and not that the premises are or shall be in any particular condition or state or repair, or that they are suitable for the purpose for which they were let. *Arden* v. *Pullen*, 10 M. & W. 321; *Sutton* v. *Temple*, 12 M. & W. 52; *Hart* v. *Windsor*, 12 M. & W. 68, 85; *Libbey* v. *Tolford*, 48 Maine, 316; *Gregor* v. *Cady, supra*; *Foster* v. *Peyser*, 9 Cush. 242; *Willis* v. *Castle*, 3 Gray, 356; *Jaffe* v. *Harteau*, 56 N. Y. 398, 401; *Bowe* v. *Hunking*, 135 Mass. 383; *Tuttle* v. *Gilbert Manf. Co.* 145 Mass. 169, 176. Such is the general rule of law in this country as between lessor and lessee. If a lessee in this State would have the result otherwise, he must bring it about by some express stipulation in the lease, until the rule shall become modified by the legislature as it was in England, in 1885, by St. 48 & 49, Vict. c. 72; *Walker* v. *Hobbs*, (L. R.) 23 Q. B. D. 458. It does not apply to premises over which the lessor retains control, as a common passageway by which several tenements are reached. *Toole* v. *Beckett*, 67 Maine, 544; *Sawyer* v. *McGillicudy*, 81 Maine, 318.

The rule is subject to an exception arising from a duty which the law, under certain circumstances, imposes upon the lessor because of the relation subsisting between him and his lessee. For if, at the time of the letting, there is some latent or concealed defect in the premises, consisting of original structural weakness, decay or infectious disease, which the lessor knows renders their occupation dangerous and is not known to the lessee or discoverable by his careful inspection, the law makes it the duty of the lessor to disclose it; and a failure to do so is actionable negligence if injury results. *Cowen* v. *Sunderland*, 145 Mass. 363; *Bowe* v. *Hunking*, 135 Mass. 380, and cases

there cited; *Scott* v. *Simons*, 54 N. H. 426, 431; *Walden* v. *Fitch*, 70 Pa. St. 460; *Edwards* v. *N. Y. & H. R. Co.* 98 N. Y. 245; *Minor* v. *Sharon*, 112 Mass. 477; *Cesar* v. *Karutz*, 60 N. Y. 229; *Wallace* v. *Lent*, 1 Daly, 481.

While the rule *caveat emptor* applies to lessees for the reason that they can, if they will, protect themselves by inspection and contract, no such reason exists for applying it to such third persons as the law denominates strangers and do not stand on the same footing with the lessee. But when a lessee enters into a dwelling-house under a lease for years, or as a tenant at will, he, in the absence of any stipulation to the contrary, has full possession and sole control thereof and it is practically his own private property *pro hac*. No one, not even the lessor himself, can lawfully enter without the lessee's permission or invitation express or implied. *Mellen* v. *Millett*, 126 Mass. 545. The law leaves it to the tenant to say who shall be his guest in his private dwelling-house. And if a guest does so enter and while there is injured, without his own fault, by some defect therein, he must seek his damages from him whose invitation impliedly assured him he could enter safely and who alone is responsible for the defect which caused the injury. In such a case the guest can have no greater claim against the lessor than the lessee himself and the members of his family have. *Robbins* v. *Jones*, 15 C. B. (N. S.) 221; *Bowe* v. *Hunking*, 135 Mass. 380, 383; *Burdick* v. *Cheadle*, 20 O. St. 393 (S. C. 20 Am. R. 767);- *Moore* v. *Logan*, *I. & S. Co.* 4 Cent. R. 505-6; *O'Brien* v. *Capwell*, 59 Barb. 497; *Nelson* v. *Liv. B. Co.* (L. R.) 2 C. P. D. 311; 1 Thomp. Neg. 323; Shear. & R. Neg. § 503.

If when let, premises are in a condition which is dangerous to the public, or with a nuisance upon them, the landlord may be liable to strangers for injuries resulting therefrom; for by the letting of them in that condition and receiving rent therefor he is considered as authorizing the continuance of the nuisance. *Nugent* v. *B. C. & M. R. R.* 80 Maine, 62, 77, 78, and cases cited; *Godley* v. *Hagerty*, 20 Pa. St. 387; *Stratton* v. *Staples*, 59 Maine, 94; *Burbank* v. *Bethel*, *S. M. Co.* 75 Maine, 373, 383; *Nauss* v. *Brua.* 107 Pa. St. 85; *Fow* v. *Roberts*, 108 Pa.

St. 489 ; *Dalay* v. *Savage*, 145 Mass. 38 ; *Joyce* v. *Martin*, 15 R. I. 558 ; *Ahern* v. *Steele*, 115 N. Y. 203.

Our opinion, therefore, is that the exceptions must be sustained.

*Exceptions sustained.*

PETERS, C. J., WALTON, LIBBEY, HASKELL and WHITEHOUSE, JJ., concurred. ·