FRED A. BENNETT

*vs.*

DANIEL F. SULLIVAN, et als.

Androscoggin.    Opinion March 29, 1905.

*Landlord and Tenant.    Repairs.    Caveat Emptor.*

When a landlord leases a dwelling house to a tenant there is no implied warranty that such dwelling house is reasonably fit for habitation, and no obligation on the part of the landlord to make repairs on the leased premises unless he has made an express valid agreement to do so.

The common law rule of caveat emptor is still in force in this state and applies to a lease as well as a sale of property.

The owner of private property owes to a prospective lessee no duty to exercise ordinary care to ascertain and apprise him of unknown defects in the property to be leased where such prospective lessee has equal opportunity to ascertain the defects.

The plaintiff by an oral contract hired from the defendants the middle tenement of the defendants' three story house, coupled with an agreement on the part of the defendants, as the plaintiff alleged, that the defendants would repair said tenement. The plaintiff then entered into the possession and occupation of said tenement. Afterwards the defendants gave the plaintiff permission to use a certain platform, which was not a part of the plaintiff's tenement but was on a level with and assigned to the use of the tenement below, provided the tenant below consented. At the time the plaintiff hired the tenement occupied by him, the use of this platform by the plaintiff was not in contemplation of the plaintiff and the defendants as one of the privileges pertaining to the tenement hired by the plaintiff. By reason of the defective condition of this platform the plaintiff was injured. *Held:* that the agreement of the defendants to repair the middle tenement, if any such were made, cannot be construed to include repairs on the platform.

Also *held,* that even if the defendants did subsequently promise to repair the platform that such promise was no part of the original contract of hiring and did not operate as an inducement for the plaintiff to take the tenement, and as the plaintiff did not threaten to quit the premises if such repairs were not made, such promise, if any were made, was without consideration.

On report.    Judgment for defendants.

Action to recover damages for an injury sustained by the plaintiff by reason of the defective condition of a platform on the defendants' premises, one tenement of which was occupied by the plaintiff as a tenant at will.

The case is stated in the opinion.

*George C. Wing,* for plaintiff.

*Newell & Skelton,* for defendants.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WHITEHOUSE, J. This is an action to recover damages for an injury sustained by the plaintiff Oct. 13, 1903, by reason of the defective condition of a platform on the defendants' premises, one tenement of which was occupied by the plaintiff as a tenant at will. The testimony is reported to this court for a final determination of the rights of the parties.

It is alleged in the plaintiff's declaration that the "plaintiff, at the time of becoming a tenant, was promised by the agent of defendants, that if he would enter into the use and occupation of said premises, or a portion of the same, to be assigned to him, that the same should be put in good repair and in safe condition; that only upon this agreement did he become the tenant of the defendants, and began his occupancy of said premises as such; that the premises were allowed to fall into decay, and by exposure to the weather become rotten and unsafe, all of which the defendants well knew, and which condition of affairs they neglected to correct. And among other appurtenances in connection with said premises was a platform, erected for the purpose of hanging clothes to dry, and for general uses in connection with the occupancy of said premises."

In support of this averment, the plaintiff introduces evidence showing that at the time of the accident he was in the occupancy of the middle tenement of the defendants' three story dwelling house in Auburn at a rental of eleven dollars per month, payable monthly; that at the time he engaged the tenement, about four years prior to the accident, the defendants' agent told him if he would move in he

would "fix it up;" and "see that it is all put in proper shape in the spring." It is not claimed that this agreement was in writing.

The defendant's agent, Mr. Allen, denies that he gave any assurance whatever that he would make repairs on the tenement at any time and testifies that the platform in question at the rear end of the stable was not an appurtenance of the middle tenement engaged by the plaintiff, but of the basement occupied by one Pusy. It also appears from the testimony of the plaintiff's wife that the use of this platform was not expressly included as one of the privileges connected with the plaintiff's tenement at the time of the original hiring but that she obtained permission from Mr. Allen, a few days after they moved in, to use this platform for the purpose of hanging out clothes; and she admits that Mr. Allen then informed her in substance that it could only be used by her with the consent of Mr. Pusy, who occupied the basement. The plaintiff's wife further testifies that some two years afterward her foot went through the floor of this platform on account of its defective condition, and upon her complaint, Mr. Allen said he would "see to it at once." This is also denied by Mr. Allen, it is agreed, however, that no repairs were ever made on this platform during the plaintiff's occupancy of his tenement, prior to the time of the accident, and that he was injured by falling from it on account of the defective condition of the railing.

The law governing the rights of parties in the situation disclosed by this evidence is well settled in this state. It is a familiar rule, in the first place, that in the case of a dwelling house there is no implied warranty that it is reasonably fit for habitation, and no obligation on the part of the landlord to make repairs on the leased premises unless he has made an express valid agreement so to do. *Libby* v. *Tolford*, 48 Maine, 316; *O'Leary* v. *Delaney*, 63 Maine, 584.

In the case at bar, however, it is contended in behalf of the defendants in the first place that upon the plaintiff's own testimony, considered in connection with the undisputed facts in the case, the agreement to repair alleged to have been made by defendants' agent, was within the statute of frauds and could only be proved by some memorandum in writing; and *O'Leary* v. *Delaney*, 63 Maine, 584, is cited by counsel in support of this proposition. In that case the

plaintiff hired a certain tenement of the defendant at a rental of eight dollars per month and the landlord agreed as a part of the contract to repair a certain elevated walk connected with the premises. The presiding judge ruled that the agreement was within the statute of frauds and could only be proved by a memorandum in writing. In the opinion *McMullen* v. *Riley*, 6 Gray, 500, is cited as an authority directly in point to sustain that ruling. In the latter case it distinctly appears that the oral agreement in question was to hire a shop for one year at a rental of $125.00 a year, and this agreement was declared to be within the statute of frauds. But it is not apparent from the statement of facts in *O'Leary* v. *Delaney*, that the oral agreement there in question might not have been performed within one year from the time it was alleged to have been made. Furthermore there were two other grounds more fully considered in that case upon which the decision appears to have been based.

It is unnecessary to determine, however, whether or not, this dictum in *O'Leary* v. *Delaney*, with respect to the statute of frauds was warranted by the law and the facts of that case, for it has been seen that in the case at bar it distinctly appears from the evidence that the oral agreement set up by the plaintiff was one to be performed in the spring, within six months from the time it was alleged to have been made.

But assuming that the alleged agreement of the defendant's agent to "see that it is all put in proper shape in the spring" was not within the statute of frauds and was capable of being proved by parol, there are still insuperable obstacles to the maintenance of the plaintiff's action for damages.

It satisfactorily appears from the evidence that the platform in question was not a part of the plaintiff's tenement but was on a level with and assigned to the use of the tenement below. It was provided with facilites for hanging out clothes, superior to those found on the piazza connected with the plaintiff's tenement. For the accommodation of the plaintiff's wife the defendant's agent gave her permission to use the platform, a few days after they took possession, provided the tenant below consented. According to the allegations in the writ and the testimony introduced by the plaintiff, the defendants'

general agreement "to fix up" the tenement was made as a part of the original contract and before the plaintiff entered into the occupation of the premises. The use of this platform was not then in contemplation of the parties as one of the privileges pertaining to the tenement hired by the plaintiff. The agreement of the defendants' agent to repair the middle tenement, if any was made by him cannot be construed to include repairs on the platform for it was not a part of the plaintiff's tenement; nor can it be presumed that the plaintiff was induced to hire it by considerations not present to the mind of either party.

It is further claimed on the part of the plaintiff, it is true, that at the time his wife met with a slight accident through a defect in the floor of the platform, the defendants agreed specifically, to make repairs upon it; but this promise, if made, as claimed by the plaintiff, was no part of the original contract of hiring and did not operate as an inducement for the plaintiff to take the tenement. It is not claimed that the plaintiff threatened to quit if no repairs were made. The defendants were then under no legal obligation to make repairs upon this platform, and any promise to do so, if made, was without consideration.

Furthermore, as before stated the common law rule of caveat emptor is still in force in this state and applies to a lease as well as the sale of property. The owner of private property owes to the prospective lessee no duty to exercise ordinary care to ascertain and apprise him of unknown defects in the property to be leased where a prospective lessee has equal opportunity to ascertain the defects. *Whitmore* v. *Orono Pulp Co.*, 91 Maine, 297. In the case at bar, neither the defendant nor his agent had any special knowlege of the defective condition of the railing around the platform. The plaintiff and his wife had frequent occasion to use it and a better opportunity than the defendants or their agents to discover the actual condition of the platform and the railing. The plaintiff admits that he "must have known" it. No repairs were made on this platform prior to the accident. Yet the plaintiff continued in the occupation of the tenement and in the use of this platform. It is the opinion of the

court upon this state of the law and the facts, that the defendants are not liable to the plaintiff.  *Shackford* v. *Coffin*, 95 Maine, 69; *Gregor* v. *Cady*, 82 Maine, 131.

*Judgment for the defendants.*