HARVEY R. COLE
*vs.*
WINFIELD C. LORD

Cumberland.    Opinion, July 21, 1964.

*Bernstein, Shur, Sawyer and Nelson,*
   by *Sumner Bernstein,* for Plaintiff.

*Mahoney, Thomas, Desmond and Mahoney,*
   by *James R. Desmond,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

SIDDALL, J.   This is a complaint seeking damages for personal injuries alleged to have been suffered by the plaintiff when he came in contact with a piece of pipe which was located in the cellar of premises leased by the defendant to the plaintiff.   The case was tried solely on the issue of liability.

At the conclusion of the evidence the defendant moved for a directed verdict on the grounds that the plaintiff had not proved negligence on the part of the defendant and had not proved the plaintiff's due care.   The court reserved his decision on the motion.   The jury returned a verdict for the plaintiff.   The defendant then, upon the grounds stated in his motion for directed verdict, addressed a motion to the presiding justice to set aside the verdict and enter a judgment for the defendant in accordance with his motion for a directed verdict.   This motion was granted and the plaintiff filed an appeal.

[1]   The standard to be applied in considering a motion for judgment *n.o.v.* is the same as that applied in a motion for a directed verdict.   Field and McKusick, Maine Civil Practice, Section 50 (c) p. 406.   (Reporter's Notes)

We summarize briefly the pertinent facts in this case in the light most favorable to the plaintiff. Plaintiff on January 16, 1960, leased from the defendant certain premises consisting of the ground floor and basement of property located in Portland. Prior to the lease the plaintiff had looked over the leased premises accompanied by the agent of the defendant, but did not examine the cellar. The lease contained no provision requiring the landlord to make repairs. The plaintiff did not go into the cellar prior to the date of the lease. After the date of the lease he went into the cellar for the purpose of pouring water into the humidifier in front of the furnace. No inspection was ever made of the entire cellar area. The cellar was divided into a small room near the cellarway stairs and a larger room in which the furnace was located. The stairway to the basement and the area in front of the furnace were lighted by three lights controlled by a switch at the head of the stairway. Protruding outward from the wall behind the furnace was a rusty pipe about 2½ inches in diameter with an elbow on it bent downward. There appears to be no testimony with reference to the length of the pipe, but from an examination of one of the exhibits in the case, a plan drawn according to scale, the pipe appears to be about two feet in length, and located approximately 10 feet to the rear and to the left of the furnace. The testimony of the plaintiff fairly indicates that prior to the accident he did not know of any light fixtures in the rear of the furnace and did not look for them. The defendant had some wood or small boards of different sizes piled up against the wall in the rear of the furnace. The plaintiff wished to use some of the wood to make repairs in the shed, and received permission to do so. On September 14, 1960, he went behind the furnace, and while on his knees pulling out the wood to throw it into the lighted area he was called from the stove. He stood up, and in the process of doing so came in contact with the pipe.

The defendant knew of the existence of the pipe, and the plaintiff did not know of its existence, and never made any examination or inspection of the area in the cellar in which the pipe was located. The inference to be gathered from the testimony is that the area in the rear of the furnace was dark and without illumination from the three lights controlled by the switch at the head of the stairs.

[2]    It is a general principle of law that in the absence of an express agreement on the part of the landlord, and in the absence of fraud, the tenant, under the principle of *caveat emptor,* takes the property for better or worse.   See *Jacobson* v. *Leaventhal,* 128 Me. 424, 426, 148 A. 281, 68 A. L. R. 1192; *Hill* v. *Day & Foss,* 108 Me. 467, 468, 81 A. 581; *Bennett* v. *Sullivan,* 100 Me. 118, 122, 60 A. 886; *McKenzie* v. *Cheetham,* 83 Me. 543, 548, 22 A. 469; *Gregor* v. *Cady,* 82 Me. 131, 136, 19 A. 108.

There is no claim in this case that the pipe constituted a nuisance.

The plaintiff calls our attention to the cases of *Miller* v. *Hooper,* 119 Me. 527, 112 A. 256, and *Jacobson* v. *Leaventhal,* 128 Me. 424, 148 A. 281, 68 A. L. R. 1192.   In *Miller* on page 528 of 119 Me., on page 257 of 112 A. the court said:

> "The duties which a landlord owes to his tenants and their households are established by many judicial decisions.   He must make such repairs as he expressly agrees to make.   He must disclose to the tenant any hidden defects of which he knows or should know.   No further duty devolves upon him in respect to the premises of which the tenants are given exclusive possession."

In *Jacobson* on page 426 of 128 Me., on page 282 of 148 A. the court said:

> "The general principle, not questioned by either party, is that a tenant takes the leased premises

for better or for worse, with no obligation on the part of the lessor to make repairs. The liability for injuries caused by a dangerous concealed defect, known to the lessor and not made known to a tenant, is an exception to this rule."

*Miller* involved a suit for injuries on a common stairway under the control of the landlord. In *Jacobson* the plaintiff was injured on a stairway located in property leased by plaintiff's husband. No claim was made that the injury was due to a latent defect, and recovery was sought from the landlord on the theory that he had agreed to make repairs and had failed to do so. The case turned upon the question of whether the action should have been brought in contract or in tort. The court held that the action should have been brought for breach of contract. In neither of these cases was the question of the liability of a landlord for latent defects in leased premises under the exclusive control of the tenant an issue. The quoted statements cannot be taken as an expression of law on the facts of the instant case.

The plaintiff also cites the case of *Shackford* v. *Coffin*, 95 Me. 69, 71, 49 A. 57, 58. The court in that case said:

"Plaintiff was injured by a defective stairway to a tenement leased by defendant to plaintiff. Whatever the defect was, — whether from rotting of the timber or planking or otherwise, — there is no evidence that defendant knew of its existence. In such case the rule caveat emptor applies. The plaintiff had as much knowledge in regard to it as the defendant. All that was visible or known to the defendant or his agent was visible to the plaintiff.

"If the landlord had known of a secret defect not *discoverable* by the tenant, he was bound to disclose it." (Emphasis ours.)

In *McKenzie* v. *Cheetham*, 83 Me. 543, 549, 22·A. 469, 470, the court said:

> "The rule [that caveat emptor applies] is subject to an exception arising from a duty which the law, under certain circumstances, imposes upon the lessor because of the relation subsisting between him and his lessee.  For if, at the time of the letting, there is some latent or concealed defect in the premises, consisting of original structural weakness, decay, or infectious disease, which the lessor knows renders their occupation dangerous, and is not known to the lessee or discoverable by his careful inspection, the law makes it the duty of the lessor to disclose it; and a failure to do so is actionable negligence if injury results."

Our court in the recent case of *Levesque* v. *Fraser Paper Limited*, 159 Me. 131, 189 A. (2nd) 375, had occasion to define the term "latent defect."  In that case the court was dealing with a complaint brought by an employee of an independent contractor engaged in demolishing a building, against the owner of the building.  The plaintiff in his pleadings declared there was a hidden or latent defect in the roof of the building being demolished which he, in the exercise of due care, could not have ascertained.

Our court in that case said:  "A 'latent defect' is one which is hidden from knowledge as well as from sight and one which could not be discovered by ordinary and reasonable care.  *Garshon* v. *Aaron*, 330 Ill. App. 540, 71 N. E. (2nd) 799, 801 (Ill. 1947)."

We believe the court in using the term "careful inspection" in *McKenzie* used it in the sense of requiring ordinary and reasonable care on the part of a tenant in the inspection of leased premises.

[3]  If, at the time of the letting, there is a latent or concealed defect in the premises which renders their occupancy dangerous, and which is known to the lessor, or

should have been known to him, and which is not known to the lessee or discoverable by him in the exercise of ordinary and reasonable care, the lessor owes the duty to the lessee to disclose that defect to the lessee, and a failure to do so is actionable negligence in the event that injury results.

[4] In the instant case the premises upon which the pipe was located were exclusively under the control of the plaintiff from the date of the lease on January 16, 1960, until the date of his injury. The plaintiff saw fit to accept the lease and continued to occupy the premises without making an examination of the area in which the accident happened. The pipe was not concealed in the sense that it could not be seen upon an examination of the cellar area. It was only concealed from view because it was located in an area of the cellar not illuminated. Ordinarily the question of whether there had been a reasonable inspection of the premises is for the jury. In the instant case the plaintiff during the eight months he had possession of the premises prior to the time he was injured made no examination or inspection whatever of the area in which his injury occurred. Had he done so, he would have discovered the existence of the pipe. In fact, the plaintiff testified that the pipe would have been clearly visible, if the area had been lighted. Under these circumstances the defendant was not negligent in not disclosing the existence of the pipe.

[5] Furthermore, the plaintiff himself was guilty of contributory negligence as a matter of law. He entered the unlighted area without first taking the precaution to determine whether his safety was thereby endangered. In doing so he eventually came in contact with the pipe. The injuries received by him were clearly the result of his own contributory negligence which bars his recovery.

The plaintiff is precluded from recovery on either of the grounds upon which the defendant based his motion for a directed verdict. A verdict against the defendant could not

be sustained upon the facts disclosed in this case, and the action of the presiding justice in setting aside the verdict of the jury and giving judgment for the defendant *n.o.v.* was proper.

The entry will be

*Appeal denied.*