1997 ME 99

**Cecile RODRIGUE**

v.

**Francis RODRIGUE.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 9, 1997.
Decided May 8, 1997.

Sidney H. Geller, Law Offices of Geller & Ferris, Waterville, for plaintiff.

Michael L. Rair, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Plaintiff Cecile Rodrigue appeals from a summary judgment entered in the Superior Court (Somerset County, Alexander, J) in favor of defendant Francis Rodrigue. Plain-

tiff filed a complaint against defendant, her landlord, seeking damages for the personal injuries she suffered when she fell down the cellar stairs in defendant's apartment building. Plaintiff contends that a material issue of fact remains with respect to whether the stairs were within her exclusive possession and control and, therefore, the court erred in granting a summary judgment. We agree, and we vacate the judgment.

[¶ 2] The facts as developed for purposes of the summary judgment motion are as follows: Defendant owns a three-family, three-story apartment building at 38 Elm Street in Fairfield. In addition, he owns other apartment buildings in Fairfield, and plaintiff has rented several different apartments from defendant over the past few years. In 1992, plaintiff moved from the second floor apartment to the first floor apartment at 38 Elm Street, where she lived with her twenty-five year old son, Michael Rodrigue. The rental agreement was oral and included heat. Both the first and second floor apartments were heated by a steam furnace housed in the dirt floor cellar. The water level in the furnace was not monitored automatically; when the water level was too low, the furnace would go off leaving the apartments without heat until someone added water to the boiler. There are two entrances to the cellar. A stairway leads to the basement from the first floor living room in plaintiff's apartment, and there is "a 3' by 30" scuttle hole like a bulkhead" on the exterior of the building. On the morning of October 19, 1992, plaintiff woke up to a cold apartment and started downstairs to check the boiler. She slipped on the second or third step of the stairs and tumbled down the remaining stairs resulting in injuries to her back, neck, head, and shoulder.

[¶ 3] In 1996, plaintiff filed a complaint in the District Court alleging that her fall was caused by debris on the stairs and a loose handrail, that defendant breached his duty to maintain the stairs in a safe condition, and that his breach proximately caused her injuries. Defendant removed the case to the Superior Court and requested a jury trial. During discovery, plaintiff, Michael, and defendant were deposed. Plaintiff and Michael testified that the cellar and the stairs were not part of their apartment lease, they did not agree to assume responsibility for monitoring the furnace, and they did not use the cellar for other purposes. Defendant testified that he explained the need to monitor the furnace to plaintiff and Michael before they moved in. He also stated that there were a number of boxes in the cellar that he thought belonged to plaintiff and Michael, and that no other tenants used the cellar to his knowledge.

[¶ 4] Michael admitted that he may have put a plastic Christmas tree down cellar with some ornaments. He also admitted that defendant showed him how to adjust the boiler water level when Michael was doing some work for defendant before they moved into the apartment. Similarly, before moving into the apartment, Michael had been down cellar to store paint cans and construction materials for defendant. Plaintiff stated that she had gone down the stairs only once before, two or three years before the incident, when defendant called her and requested that she check the oil level. Michael had gone down on a few occasions to adjust the water level, but stated that he did it under protest because he knew defendant would not do it. Michael was also upset that defendant would not install an automatic water fill switch.

[¶ 5] Michael testified that the other entrance to the cellar, the bulkhead, had been nailed or screwed shut by defendant and was in that condition on October 19, 1992. Defendant agreed that he did seal the bulkhead with plywood and insulation but not until November of that year. Michael stated that defendant never used the bulkhead and that during the previous tenants' term, defendant would come and go through the apartment "because he had a key to their apartment."

[¶ 6] Plaintiff stated that the stairs were covered with plaster, dust, and debris, such as boards, nails, paint cans, and brushes. She thought she slipped when she stepped on some plaster or other debris, but she does not know what she stepped on. She states that she was unable to hang onto the loose handrail.

[¶ 7] Defendant moved for a summary judgment arguing that he owed no duty to

plaintiff because the stairway was in plaintiff's exclusive possession and control. Defendant also argued that plaintiff had failed to present any evidence of causation. After a hearing, the court granted a summary judgment in favor of defendant. The court appeared to base its ruling primarily on plaintiff's exclusive possession and control of the stairway. The court stated that defendant was entitled to judgment as a matter of law because the stairs were "within the locked area of [plaintiff's] apartment." The court, however, also noted "a problem with causation."

[¶ 8] We review the entry of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered. *Panasonic Communications & Systems Co. v. State of Maine,* 1997 ME 43, ¶ 10, 691 A.2d 190. The judgment will be upheld if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.* To survive a defendant's motion for a summary judgment, a plaintiff must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law. *Northeast Coating Technologies Inc. v. Vacuum Metallurgical,* 684 A.2d 1322, 1325 (Me.1996). The plaintiff must establish a *prima facie* case for each element of the cause of action. *Id.*

■ [¶ 9] It is well settled that a landlord is not liable for injuries caused by defective conditions in areas that are within the exclusive possession and control of a lessee. *Cole v. Lord,* 160 Me. 223, 202 A.2d 560 (1964).[1] Plaintiff argues that there are genuine issues of material fact concerning control and possession of the cellar stairs. She contends there are unresolved factual disputes whether the basement was part of the leased premises, whether she or Michael assumed responsibility for monitoring the furnace and maintaining the stairs, and whether defendant had other means of access to the cellar.

■ [¶ 10] A tenant gains control of an area by first obtaining possession pursuant to the terms of a lease. "A lease conveys a possessory interest in the land to another for a period of time." *Town of Lisbon v. Thayer Corp.,* 675 A.2d 514, 516 (Me.1996). In *Cole,* we found that the basement where the injury occurred was "exclusively under the control of the plaintiff" because it was included in the lease along with the first floor apartment. *Cole,* 160 Me. at 229, 202 A.2d at 563. It follows that a tenant cannot be said to control an area in which she has no possessory interest pursuant to the terms of her lease.

■ [¶ 11] Landlord-tenant liability frequently involves an analysis of whether the tenant took possession of an area, and if so, whether the landlord retained some control over it. Landlord liability may result from injuries caused by defective conditions in "common areas of a rented building over which he is deemed to have control." *Nichols v. Marsden,* 483 A.2d 341, 343 (Me.1984). "[A] lessor [will] not ordinarily be held liable for injuries by a defective condition of the premises which arose after the lessee had taken possession.... An exception to this rule applies to areas of the rented premises over which the landlord retains control." *Lyden v. Winer,* 878 P.2d 516, 518 (Wyo. 1994). The question is, has the landlord retained control over a portion of the leased premises? The question is one for determination by the trier of fact. *Id.* at 519; *Andres v. Roswell–Windsor Village Apartments,* 777 F.2d 670, 672 (11th Cir.1985);

■ [¶ 12] Plaintiff contends that she had no possession or control of the cellar stairs, let alone exclusive possession and control. She denies that the stairs or the cellar were included in the leased premises under the terms of her oral lease. She also denies that she or Michael used the stairs or the cellar except for the landlord's purposes. The court appears to have inferred exclusive possession and control of the cellar and stairs from the fact that access was "within the locked area of [plaintiff's] apartment." The

---

1. Exceptions to this rule result in landlord liability when the landlord fails to disclose a latent defect, gratuitously and negligently repairs the premises, or expressly agrees to maintain the premises. *Nichols v. Marsden,* 483 A.2d 341, 343 (Me.1984). None of these exceptions apply in the present case.

fact that the top of the cellar stairway is accessed through plaintiff's apartment does not establish as a matter of law that the leased premises includes the cellar and stairs. She and her son testified that they exercised no control over the cellar or the stairs, and that defendant retained and exercised some control over the area.[2]

[¶ 13] Restricted access to the stairs does not, as a matter of law, preclude a factual finding that plaintiff never obtained possession or, that defendant has retained some control over the stairs themselves. In *Black v. Fiandaca*, 98 N.H. 33, 93 A.2d 663 (1953), the Court held that a question of fact existed concerning control over the attic where both the tenant and landlord stored items, the only access to the attic was through the tenant's kitchen closet, and the landlord usually sought permission from the tenant to access the attic. The court found that the restricted access was not conclusive on the issue of control. We reach a similar conclusion in this case.

 [¶ 14] Finally, defendant argues the absence of proof of causation as an alternative ground to support the court's judgment. Defendant contends that plaintiff's inability to describe how the accident happened precludes her from proving causation. The argument is without merit.

> A plaintiff may under many circumstances be completely unable to remember or recount or explain an accident, but may nevertheless recover if the deficiency is met by other reliable evidence. Such evidence may be direct or circumstantial. It may come from eye witnesses or known physical facts. It may raise reasonable inferences which satisfy the burden of proof.

*Thompson v. Frankus*, 151 Me. 54, 58, 115 A.2d 718, 720 (1955).

[¶ 15] Plaintiff presented testimony that, if believed, could support a finding that her injuries were caused by defendant's alleged lack of reasonable care. She and Michael testified that the stairs were littered with debris, and that defendant was aware of the condition of the stairs. Plaintiff testified that, although she does not know exactly how the accident happened, she slipped when she stepped on some of the debris left on the stairs.

[¶ 16] Reviewing the evidence in the light most favorable to plaintiff, defendant is not entitled to a judgment as a matter of law on either the issue of exclusive possession and control of the stairs or causation.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

---

**2.** Plaintiff testified that defendant had a key to her apartment and that he may have used the key without permission during the previous tenant's term; defendant stored some of his property in the cellar and used the stairs at times to access the basement for storage and for maintaining the furnace. In his brief, defendant concedes that the cellar itself is a common area. Plaintiff also testified that defendant blocked off his other means of access to the cellar. A trier of fact could infer that the landlord intended to retain some control of the only remaining means of access.