STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CLERK CIVIL ACTION
Docket No. CV-06-106

2008 FEB 11 A 11: 12

FACTORY MUTUAL INSURANCE CO.,

       Plaintiff,

v.                                                                    ORDER

R. C. MOORE INC.,

       Defendant.

Before the court is a motion for summary judgment by defendant R. C. Moore Inc.

1.    <u>Summary Judgment</u>

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., <u>Johnson v. McNeil</u>, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. <u>Id.</u> Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. <u>Rodrigue v. Rodrigue</u>, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

2.    Facts

This case concerns damage to 123,000 Beta-Lactam test kits which are used by the dairy industry to test milk and must be shipped at a temperature of 45° Fahrenheit. Plaintiff's Statement of Additional Material Facts (SAMF) ¶ 5. The kits were damaged after having been loaded onto a temperature-controlled trailer for shipping. Defendant's SMF ¶5 (admitted). IDEXX, the manufacturer of the test kits, had contracted for the shipping of the kits with defendant R. C. Moore Inc., which had delivered the temperature-controlled trailer to IDEXX for IDEXX to load the test kits. Plaintiff's SAMF ¶¶ 1, 6. It is undisputed that the kits were left in the trailer overnight when outside temperatures were around 0° Fahrenheit and that the kits became so cold they had to be discarded. Defendant's SMF ¶ 2 (admitted); Plaintiff's SAMF ¶¶ 12, 16, 17.

Plaintiff Factory Mutual Insurance Co. (FMIC), as the subrogee of IDEXX,[1] contends that R. C. Moore is liable for the damage because (1) R. C. Moore did not pick up the trailer in a timely fashion and (2) the temperature control unit in the trailer failed. R. C. Moore contends that even if those allegations are true, IDEXX (and thereby FMIC as its subrogee) assumed responsibility for any damage to the test kits in the Transportation Services Agreement that had been entered into between IDEXX and R. C. Moore.

---

[1] Factory Mutual has recently filed a motion to substitute IDEXX as the named plaintiff. The deadline for R. C. Moore to oppose that motion has not expired.

3.  Negligence Claim

This case turns on the meaning of paragraph 8(h) of the Transportation Services Agreement entered into between IDEXX and R. C. Moore. That provision provides as follows:

> [IDEXX] shall be responsible for, and shall provide, insurance covering all loss or damage to all or any portion of the cargo during loading, transit, and/or unloading.

Defendant's SMF ¶ 12 (admitted). FMIC does not dispute that where loading, transit, or unloading is involved, this contractual provision places the risk of any loss or damage on IDEXX. However, it contends that once the trailer was loaded and was awaiting pickup by R. C. Moore, the cargo was not "in transit" and that therefore paragraph 8(h) does not apply.

The initial question here is whether the contract language quoted above is ambiguous. The Transportation Services Agreement contains an integration clause so that, unless the language is ambiguous, the court cannot consider extrinsic evidence.

In the court's view, the only reasonable interpretation of the relevant language places the risk of loss in this case on IDEXX. Fairly read, the words "loading, transit, and/or unloading" cover the entire process in which the cargo is loaded at the point of origin, is transported from there to the destination, and is unloaded at the destination. If FMIC's interpretation were accepted, IDEXX would be responsible for cargo damage during certain periods of the shipping process but not during other periods. IDEXX's responsibility, however, would not correspond with whether IDEXX was at fault for the damage. Under FMIC's interpretation, for instance, damages caused by unsafe driving on the part of an R.C. Moore employee would remain IDEXX's responsibility. Indeed, the logical extension of FMIC's interpretation is that IDEXX would be responsible for

3

cargo loss during shipping whenever the wheels of the trailer were moving but would not be responsible when the wheels had stopped. This does not make sense.

Accordingly, the court concludes that paragraph 8(h) of the Transportation Services Agreement is not ambiguous and bars FMIC's negligence claim. Moreover, even if it were assumed that paragraph 8(h) were reasonably subject to two different interpretations, the court would then be required to consider extrinsic evidence. *See* Restatement 2d Contracts § 214(c).[2] In this case R. C. Moore has offered unrebutted evidence that at the time the language of ¶ 8(h) was negotiated, it was agreed that IDEXX would have responsibility for the cargo from the time it was loaded to the time it was unloaded and that R. C. Moore was not expected to insure the cargo. Defendant's SMF ¶¶ 15-17;[3] Deposition of Shawn Moore 49-53. Accordingly, there is no disputed issue for trial as to the meaning of ¶ 8(h).

4.    Contract Claims

FMIC argues that it may nevertheless pursue a breach of contract claim against R. C. Moore based on provisions of the Transportation Services Agreement that (1) required R. C. Moore to provide trailers capable of maintaining the air in the trailer within the range of -29° to +32° Celsius and (2) specified that IDC had the right to request that cargo transported by R. C. Moore be maintained during transit at either 5° Celsius or -20° Celsius and that R. C. Moore would be obligated to maintain those temperatures within plus or minus 3° Celsius. Agreement ¶¶ 7(a), (b), 8(c); Plaintiff's SAMF ¶ 3 (admitted).

---

[2]   Restatement § 214(c) expressly applies even if the contract has an integration clause.
[3]   Although FMIC denied those paragraphs in its response to R. C. Moore's SMF, it did not submit contrary evidence and relied solely upon its interpretation of the contract. *See* Plaintiff's SMF response to ¶¶ 15-17.

4

At the outset, this language is not entirely apposite to the issues in this case. Providing a trailer capable of maintaining a temperature within the range of -29° to +32° Celsius (-20.2° Fahrenheit to +89.6° Fahrenheit) and maintaining a temperature "within that range" for the duration of the trip, Agreement ¶ 7(a), would not have prevented the damage here. Moreover, IDEXX's right to specify a temperature of either 5° Celsius (41° Fahrenheit) or -20° Celsius (-4° Fahrenheit) and R. C. Moore's obligation to stay within 3° Celsius of those temperatures[4] does not exactly fit a situation where the parties agree that the temperature of the Beta-Lactam test kits was to be kept at 45° Fahrenheit.[5]

In any event, the court concludes that the more reasonable interpretation of the contract is that paragraphs 7 and 8 specified the nature of the equipment that R. C. Moore was expected to provide and the temperature-control conditions that R. C. was expected to meet under the contract and did not constitute a separate warranty that, if requested by IDEXX, specific cargo would be maintained at 35.6° Fahrenheit to 46.4° Fahrenheit. However, even if paragraphs 7(b) and 8(c) of the Agreement are interpreted to require R.C. Moore to maintain any given shipment at between 35.6° Fahrenheit and 46.4° Fahrenheit if requested to do so by IDEXX, there would then be an ambiguity of whether those paragraphs or paragraph 8(h) controlled in the case at bar. Once again, that ambiguity is resolved by the unrebutted extrinsic evidence offered by R. C. Moore that the parties understood that all risk of cargo damage from the time of

---

[4] For 5° Celsius, the range would be from 35.6° Fahrenheit to 46.4° Fahrenheit.

[5] Interpreting the contract language most favorably to FMIC, R.C. Moore still would not have violated the contract if it had kept the temperature at 35.6° Fahrenheit. Although the record does not absolutely establish whether the test kits would have been damaged if the temperature in the trailer had fallen to 35.6° Fahrenheit, that appears to be a distinct possibility. *See* Plaintiff's SAMF ¶5 (test kits "must be shipped at a temperature of 45 degrees Fahrenheit").

5

loading to the time of unloading was assumed by IDEXX. This is sufficient to resolve any ambiguity in R. C. Moore's favor.

The entry shall be:

Defendant's motion for summary judgment dismissing the complaint is granted. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     February __11__, 2008.

_____
Thomas D. Warren
Justice, Superior Court

6

JOHN VEILLEUX ESQ
PO BOX 4600
PORTLAND ME 04112

*Plaintiff*

KEVIN LIBBY ESQ
PO BOX 7046
PORTLAND ME 04112

*Defendant*