STATE OF MAINE                                    STATE OF MAINE SUPERIOR COURT
CUMBERLAND, ss.                                   CUMBERLAND, ss. CIVIL ACTION
                                                  CLERK'S OFFICE Docket No. CV-06-490

                                                  2008 JUN 13 P 2: 54

NORTH EAST INSURANCE CO.,

        Plaintiff,

v.                                ORDER          DONALD L. GARBRECHT
                                                 LAW LIBRARY

ACADIA INSURANCE CO., et al.,

        Defendants.


        Before the court are cross motions for summary judgment in the above captioned

case.


## Summary Judgment

        Summary judgment should be granted if there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law. In considering a

motion for summary judgment, the court is required to consider only the portions of the

record referred to and the material facts set forth in the parties' Rule 56(h) statements.

*E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered

in the light most favorable to the non-moving party. *Id.* Thus, for purposes of

summary judgment, any factual disputes must be resolved against the movant.

Nevertheless, when the facts offered by a party in opposition to summary judgment

would not, if offered at trial, be sufficient to withstand a motion for judgment as a

matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99

¶ 8, 694 A.2d 924, 926.

In this case, although the legal consequences of the facts are disputed, neither plaintiff North East Insurance Co. nor defendants Acadia Insurance Co. and Voisine & Sons Logging Inc. contend there are any disputed issues for trial.

The undisputed facts are that on August 1, 2005 there was a collision on Route 11 in Stacyville, Maine, between a tractor-trailer owned and operated by Voisine & Sons and a farm-type tractor owned and operated by Clarence White. At the time of the collision White was driving his tractor in the breakdown lane of Route 11 towing a rotary mower. The parties agree that the accident was caused solely by White's negligence and that Voisine's tractor-trailer sustained damage in the amount of $41,807.03.

Prior to the accident, North East had issued a commercial insurance policy to White effective May 25, 2005, a true copy of which is annexed North East's SMF. At the time of the accident Voisine & Sons was insured by Acadia, which paid $35,081.21 to Voisine & Sons. The remaining approximately $6,725.82 in damage incurred by Voisine & Sons was uninsured. Acadia and Voisine & Sons have made a claim against North East Insurance Co. for the total of $41,807.03 in damages, and North East – disclaiming coverage – brought this declaratory judgment action.[1]

It is also undisputed that the Varney Agency, an insurance agency representing North East, issued and delivered a certificate of liability insurance to the Town of Danforth with respect to White's tractor on July 29, 2005. The certificate contains the following notation "general liability coverage for operation of 2005 Kubota Model M6800DTC-1, serial number 70687 and Loader M720, S#7175097." The certificate also contains a notation that it is issued

---

[1] North East has agreed to pay defendants $41,807.03 if defendants prevail in this action.

2

as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend, or alter the coverage afforded by the policies below.

In connection with the issuance of that certificate, Cathy Davis of the Varney Agency sent an email on July 29, 2005 to Rita Spaulding, also of the Varney Agency, stating in pertinent part as follows:

> [Y]ou had requested that I send an ID card over to the town office so [White] can register the tractor and I can't do that, he doesn't have commercial auto, he has commercial general liability. I sent a certificate to the town office showing that but they'll likely want him to have commercial auto . . . .
>
> This is relatively new for North East, they have adopted the new ISO GL form that does not provide coverage for mobile equipment while operated on public roads as a "vehicle" (going from here to there) but he DOES have coverage for mowing along SIDE the public rodes [sic] under the general liability policy.
>
> If this becomes an issue, we'll have to deal with in Monday I guess. . . . [2]

North East has submitted an affidavit from Rita Spaulding stating that North East had advised her that under certain revised definitions in the North East policy, land vehicles would now be classified as autos if they were subject to a compulsory or financial responsibility law and that this would mean that coverage would not exist unless a commercial automobile policy were obtained. She does not recall a conversation with Clarence White but states that it would have been her standard practice to convey that information to him immediately as soon as she saw the email from Cathy White stating that he was trying to register his tractor.

---

[2] Apparently the reason for the exchange of emails on July 29, 2005 was that Clarence White had traded in his old tractor and purchased a new tractor on July 28, 2005. Ms. Davis's comment that "if this becomes an issue, we'll have to deal with it Monday" is poignant because the accident happened on the following Monday.

3

It is undisputed that, whatever transpired between White and the Town of Danforth or between White and Spaulding, White's tractor was registered at the time of the accident and bore State of Maine tractor registration No. 70569. Plaintiff's SMF dated January 7, 2008 ¶ 7 (undisputed).

## Status of Tractor Under the Applicable Policy

As defendants point out, it is helpful at the outset to understand that commercial general liability policies typically exclude coverage for the operation of "autos" but provide coverage for machinery that is deemed to be "mobile equipment." Defendants' Motion for Summary Judgment dated January 7, 2008, at 5. Thus, the commercial general liability policy in this case provides that North East will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage. Section 1, Coverage A, Section 1, Insuring Agreement (Policy at 20). Exclusion (g) of the policy, however, excludes from coverage property damage arising out of the use of any "auto" owned or operated by the insured. Policy at 23.[3]

"Auto" is a defined term under the policy:

> 2. "Auto" means:
>
>     a. A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or
>
>     b. <u>Any other vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law</u> in the state where it is licensed or principally engaged.

---

[3] Exclusion (g) in turn does not apply to property damage arising out of the operation of machinery or equipment that is attached to or part of a land vehicle that would qualify under the definition of mobile equipment if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law. Policy at 24, Exclusion (g)(5)(a). However, this exception to the exclusion does not apply because the accident in this case did not arise out of the operation of any machinery "attached to or part of" a land vehicle.

4

> However, "auto" does not include "mobile equipment."

Policy at 34 (Section V – Definitions ¶ 2) (emphasis added). A farm tractor is not "designed" for travel on public roads (even if it occasionally is present on such roads) so whether the farm tractor is an "auto" subject to exclusion (g) depends, first, on whether it was a vehicle subject to a motor vehicle insurance law under subparagraph 2(b) of the above definition and, second, on the effect of the exclusion of "mobile equipment" from the definition of "auto."

Under the definition of "mobile equipment" a farm tractor would qualify as either "farm machinery" or a vehicle "designed for use principally off public roads." Policy at 37 (Section V – Definitions ¶ 12(a)). However, the definition of mobile equipment excludes any land vehicles

> subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

Policy at 38 (Section V – Definitions, last paragraph of ¶ 12 (emphasis added).

As a result, under both the definition of auto and the definition of mobile equipment, White's tractor was an "auto" if it was "subject to a compulsory or financial responsibility law or other motor vehicle insurance law." Contrary to defendants' contentions, the court does not find the policy to be ambiguous on this issue.[4]

---

[4] Defendants contend that there is at least one reading of the policy that would exclude farm tractors from the definition of autos but never get around to explaining what that reading is. They also argue that the certificate of insurance is not part of the policy; as noted above, it expressly states that it is issued "as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below."

5

On the issue of whether White's tractor was subject to a compulsory or financial responsibility law or other motor vehicle insurance law, it is undisputed that White's tractor was in fact registered. Under 29-A M.R.S. § 1601 an operator or owner of a vehicle that is either "registered in this State or required to be registered in this State shall maintain the amounts of motor vehicle financial responsibility specified in section 1605." As a matter of law, there may be a dispute whether White's tractor was a vehicle that was required to be registered.[5] However, given that White in fact registered the tractor, his registration constitutes an admission that his tractor was a vehicle. Once registered, his tractor was subject to the financial responsibility law under 29-A M.R.S. § 1601. If that section were only meant to apply to vehicles "required" to be registered, the separate reference to vehicles that are registered would be surplusage

The court concludes that under the policy, White's farm tractor comes within the exclusion for "autos."

## Defendants' Estoppel Argument

Acadia and Voisine & Sons argue that regardless of the correct interpretation of the policy North East is estoppped from denying coverage. North East's first response to this argument is that estoppel is an affirmative defense which must, by the express terms of M.R.Civ.P. 8(c), be pleaded. North East then argues that defendants, having

---

[5] Vehicle is defined in 29-A M.R.S. § 101 (91) as a device for conveyance of persons or property on a way, and it can be argued that farm tractors do not fit this definition. In *N.A. Burkitt Inc. v. Champion Road Machinery Limited*, 2000 ME 209 ¶ 8, of 763 A.2d 106, 108, the Law Court considered the definition in 29-A M.R.S. 101 (91) in holding that a road grader was not a motor vehicle for purposes of the Motor Vehicle Dealer Franchise Act, 10 M.R.S. § 1171 (11). However, the court pointedly noted that a grader could be a vehicle for purposes of Title 29-A even if it was not a vehicle for purposes of the Motor Vehicle Dealer Franchise Act. *Id.*, ¶ 11 n.7, 763 A.2d at 108 n.7. Moreover, if a farm tractor is not a vehicle under Title 29-A, then even when traveling on a public road it would not be subject to any of the rules of the road contained in such statutes as 29-A M.R.S. §§ 2051-53, 2057, 2059-60, 2064-68, 2070-72, and 2074. This would not make sense.

never raised the affirmative defense of estoppel in their pleadings cannot raise it now – after the deadline for amending pleadings is long past and after discovery has closed. The court is constrained to agree.

Even if the court were to entertain defendants' estoppel argument, it does not appear that it would generate a disputed issue of fact for trial. The parties agree that in the insurance context estoppel exists if there is (1) unreasonable conduct by the insurer which misleads the insured concerning the scope of his coverage and (2) justifiable reliance by the insured upon the conduct of the insurer. *See* Defendants' Motion for Summary Judgment dated January 7, 2008 at 9; Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment dated February 4, 2008 at 14; *Maine Mutual Fire Ins. Co. v. Grant*, 674 A.2d 503, 504 (Me. 1996); *Roberts v. Maine Bonding & Casualty Co.*, 404 A.2d 238, 241 (Me. 1979).

Defendants' estoppel argument is based on (1) the certificate of insurance issued by North East and (2) the July 29, 2005 email from Catherine Davis of the Varney Agency.

Taking these in reverse order, the July 29, 2005 email does not establish that there is a disputed issue for trial as to estoppel. First, the email was not sent to White so unless it was communicated to White, it could not constitute evidence of misleading conduct or provide a basis for reliance. Second, to the extent that it was communicated to White, it plainly stated that his tractor would not be covered "while operated on public roads as a vehicle (going from here to there)." The contents of the email thus

7

could not have misled White as to coverage while his tractor was traveling on a public road – which is what was happening when the accident occurred.[6]

That leaves the question of whether the certificate of insurance could constitute misleading conduct on which White could have relied. While it is conceivable that the insured might not have been aware of the change in North East's coverage and that he now needed a commercial auto liability policy and not just a commercial general liability policy, defendants have offered no evidence to that effect. Moreover, North East has submitted the affidavit from Rita Spaulding that it would have been her standard practice, upon receiving Cathy Davis's July 29, 2005 email, to promptly communicate that information to Clarence White even though she has no present recollection at this time. Routine practice evidence is admissible, M.R.Evid. 406, and defendants have not offered any countervailing evidence to controvert Ms. Spaulding's affidavit. Nor have defendants sought to develop such evidence by deposing Ms. Spaulding or engaging in other discovery. On this record, therefore, it appears to be unrebutted that the need for a commercial auto policy was communicated to White, thus dispelling any disputed issue for trial as there was misleading conduct or justifiable reliance. At a minimum, defendants have not offered any evidence of reliance, and it was their burden to do so.

The entry shall be:

Plaintiff's motion for summary judgment is granted, defendants' cross motion for summary judgment is denied, and judgment is issued declaring that North East's policy did not provide coverage for the property damage sustained by defendants. The

---

[6] North East agrees that another statement in the Cathy Davis email – that White's tractor was covered for mowing along side public roads – was incorrect, but that inaccuracy is not material given that the accident did not happen while White was mowing along side a road.

8

clerk is instructed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     June _13_, 2008

Thomas D. Warren
Justice, Superior Court

F COURTS
and County
Box 287
ne 04112-0287

*PAUL JOHNSON ESQ
PO BOX 9545
PORTLAND ME 04112

*Plaintiff*

COURTS
nd County
ox 287
le 04112-0287

LANCE WALKER ESQ
PO BOX 4600
PORTLAND ME 04112

*Defendant*