STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-101

CLARK RICE,

        Plaintiff

        v.                                        **ORDER**

CITY OF BIDDEFORD and
RIVERDAM, LLC,

        Defendants

Before this court is Defendant City of Biddeford's Motion for Summary Judgment and Defendant City of Biddeford's Motion for Summary Judgment on Co-Defendant Riverdam's Cross-Claims, pursuant to M. R. Civ. P. 56. In addition, before this court is Defendant Riverdam's Motion for Summary Judgment.

## FACTS

On August 23, 2000, the Defendant, City of Biddeford ("Biddeford") responded to a request concerning drainage problems at 24 Pearl Street in Biddeford, Maine. Co-Defendant Riverdam, LLC. ("Riverdam"), landlord and owner of the property located at 24 Pearl Street, had contacted Defendant Biddeford to clear the catch basin, which was backing up with water. The catch basin in question was only nine inches from Co-Defendant Riverdam's building located at 24 Pearl Street. Plaintiff, Clark Rice's employer, Twin City Taxi, leased this building from Co-Defendant Riverdam. Plaintiff Rice worked as a mechanic for Twin City Taxi.

Defendant Biddeford's crew cleaned out three catch basins with a vacuum truck including the one that was nine inches from Co-Defendant Riverdam's property.

Defendant Biddeford's crew had problems with this particular catch basin. Specifically, the grated drain cover was difficult to remove and ultimately broke when Defendant Biddeford's crew removed it. Consequently, upon completion of their cleaning activities, Defendant Biddeford's crew attempted to cover the storm drain. It is disputed, however, exactly what safety precautions Defendant Biddeford's crew took at this time.[1]

The Twin City Taxi Company used the area where the catch basin was located as a parking space and for repairing its fleet of vehicles. Based on the arrangement with Co-Defendant Riverdam, no one else had a right to use the parking space. At some point after the Defendant Biddeford's crew had cleaned out the catch basins located on Pearl Street, Plaintiff Rice fell into the catch basin that was located nine inches from Co-Defendant Riverdam's property.[2] Specifically, Plaintiff Rice fell into the storm drain up to his hip when the cover flipped under his weight. Prior to this incident, Twin City Taxi had not reported any problems with the catch basin to Co-Defendant Riverdam.

As a result of these events, on April 8, 2002, Plaintiff Rice filed a Complaint in York County Superior Court. In response, Defendant Biddeford and Co-Defendant Riverdam filed separate Motions for Summary Judgment.

---

[1] Defendant Biddeford argues that its crew used a nearby pallet to put on top of the under-sized cover it found to replace the broken cover of the storm drain. In addition, Defendant Biddeford further contends that the crew set-up a standard saw horse barricade and placed it on top of the cover and pallet. (Defendant Biddeford's Statement of Material Facts ¶¶ 13-16.) Plaintiff, however, disputes these contentions and argues that a sawhorse barricade was not present and that no cover was placed on the catch basin on August 23rd. (Plaintiff's Response to Defendant's Statement of Material Facts at ¶¶ 13-15.)

[2] Plaintiff Rice is unsure on which day of the week he fell into the catch basin. More specifically, Mr. Rice testified that he believed that "it wasn't very long after I saw that truck that I fell in it, and I guessed on the two or three days because I'm not sure." (Rice Dep. at p. 55 (lines 17-19).)

## DISCUSSION

When reviewing motions for summary judgment this court must take into account that:

> [a] summary judgment is warranted when the statement of material facts and pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law.

Darling's v. Ford Motor Co., 2003 ME 21, ¶ 4, 817 A.2d 877, 879 (citing M. R. Civ. P. 56(c), (h)). In making this determination, this court will view the facts in a light most favorable to Plaintiff Rice, the non-moving party. Mahar v. Stonewood Transp., 2003 ME 63, ¶ 8, 823 A.2d 540, 542. The Law Court has noted that summary judgment is no longer an extreme remedy. Curtis v. Porter, 2001 ME 158, ¶ 7, 784 A.2d 18, 21. Despite this, "[w]hen facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered." Id. ¶ 9.

### A. Defendant Biddeford's Motion for Summary Judgment

Plaintiff Rice concedes that Defendant Biddeford has not waived immunity by buying insurance. Thus, the first issue to address is whether Defendant Biddeford is immune from Plaintiff Rice's tort claim or whether Defendant Biddeford was engaged in an activity for which immunity has been waived. The Maine Tort Claims Act (MTCA) provides immunity to governmental entities from all tort claims seeking damages "[e]xcept as otherwise expressly provided by statute." 14 M.R.S.A. § 8103(1) (2003). An exception to this standard is delineated in 14 M.R.S.A. § 8104-A(4), which provides that a governmental entity shall be liable for its negligent acts in causing bodily injury "[a]rising out of and occurring during the performance of construction, street cleaning or repair operations on any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway, including appurtenances necessary for

3

the control of such ways including but not limited to street signs, traffic lights, parking meters and guardrails." 14 M.R.S.A. § 8104-B(4) (2003).

First, it is necessary to determine if the activity of catch basin cleaning constitutes "street cleaning" within 14 M.R.S.A. § 8104-B(4). In *Dubail v. Department of Transportation*, the Law Court held that the catch basin cleaning activity of the Department of Transportation was not ongoing and, therefore, the injury did not arise during the performance of "street cleaning." Dubail v. Department of Transportation, 1998 ME 126, ¶ 3 711 A.2d 1301, 1302. Even though the Law Court did not specifically hold that catch basin cleaning constituted "street cleaning," it can be interpreted from their holding that the Court intended the activity to be included in the statutory definition. Here, Defendant Biddeford was also cleaning catch basins on Pearl Street. Thus, the activity of Defendant Biddeford constituted "street cleaning."

Second, this court must determine whether or not Pearl Street is a "town way," such that the City is liable if it negligently performs street cleaning operations on it. In the case at bar, it is contested by both parties whether or not Pearl Street constitutes a "town way." The Plaintiff cites that at least one city employee believes that Pearl Street is a City street. See (Frechette Dep. at 21.) Also, it is important to note that Defendant Biddeford marks Pearl Street with one of its green street signs. Contrary to this, however, Defendant Biddeford asserts that only part of Pearl Street is City Street, and the portion in question is not within that part. A genuine issue of fact exists on this point.

Next, this court must address whether or not the Plaintiff Rice's injury "aros[e] out of and occur[ed] during the performance of" street cleaning. 14 M.R.S.A. § 8104-B(4). The Law Court has held that "the plain meaning of this statute requires that both the negligence *and* the bodily injury must arise out of and occur during construction, street

4

cleaning or repairs." <u>Rivard v. City of Lewiston</u>, 516 A.2d 555, 556 (Me. 1986). In the case at bar, Defendant Biddeford contends Plaintiff Rice testified that he is unsure of when his injury actually occurred. Plaintiff Rice does not contest this point, but points to further evidence in the record, which he asserts establishes that the incident could have occurred on August 24, 2003. Specifically, Plaintiff Rice cites Mr. Ricki Long's Deposition in which he testified that Plaintiff Rice fell in the catch basin the day after he saw the pallet on top of the catch basin, which was August 24, 2003. (Ricki Long Dep. at 20.) Following this testimony, however, Mr. Long also states that it could have probably been two or three days after Defendant Biddeford was there with their vacuum truck, he is not sure. (Ricki Long Dep. at 20.) Thus a genuine issue of material fact has been generated. Therefore, based on the dispute surrounding whether or not Pearl Street is a "town way" and the date of the Plaintiff's injury, this court finds that summary judgment is inappropriate.

Lastly, it is necessary to determine whether Defendant Biddeford is entitled to discretionary immunity under the MTCA. In *Adriance v. Town of Standish*, the Law Court held that the decision of whether or not to close a safety gate at a transfer station is a typical day-to-day decision not requiring the exercise of any discretionary judgment. 687 A.2d 238 (Me. 1996). In the present case, replacing a catch basin cover is a ministerial act and does not involve the exercise of discretionary judgment rooted in basic governmental policy. Hence, summary judgment is inappropriate in this case.

### B. Defendant Riverdam's Motion for Summary Judgment

Co-Defendant Riverdam argues that a landlord is not liable for defective conditions in premises leased to the exclusive control of the tenant, and therefore summary judgment is appropriate in this matter. Traditionally, a landlord is not liable to a tenant for personal injuries caused by a defective condition in premises under the

tenant's exclusive control. <u>Cole v. Lord</u>, 160 Me. 223, 202 A.2d 560 (1965). "An exception to this rule applies to areas of the rented premises over which the landlord retains control. The question is, has the landlord retained control over a portion of the leased premises? The question is one for determination by the trier of fact." <u>Rodrigue v. Rodrigue</u>, 1997 ME 99, ¶ 11, 694 A.2d 924, 926.

First, it is necessary to determine whether or not Co-Defendant Riverdam retained "control" over the area of the storm drain in question. In the case at bar, Co-Defendant Riverdam is the party that telephoned Defendant Biddeford to inform them of the problem with the catch basin. On the other hand, however, the tenant, Twin City Taxi Company, used the parking area where the catch basin is located as an exclusive parking space for its vehicles, per its agreement with Co-Defendant Riverdam. Furthermore, there exists evidence that Twin City Taxi did not have the right to exclude other tenants of the building from walking through the parking area in question. Hence, there exists a genuine dispute as to material issues of fact regarding who exercised exclusive control of the premises where the storm drain was located.

### C. Defendant Biddeford's Motion for Summary Judgment on Cross-Claim

The City of Biddeford asserts that it is entitled to summary judgment on Riverdam's cross-claim for contribution because it is immune from liability under the Maine Tort Claims Act. For the reasons noted above with respect to Mr. Rice's claim, the Motion is Denied.

Thus, each Motion for Summary Judgment is Denied.

The clerk may incorporate this order in the docket by reference.

Dated:        December 10, 2003

G. Arthur Brennan
Justice, Superior Court

Thomas G. Van Houten, Esq. - PL
David L. Herzer, Jr., Esq. - DEF RIVERDAM, LLC
Michael E. Saucier, Esq. - DEF. CITY OF BIDDEFORD