STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. CV-05-403



MARK H. RAND,

          Plaintiff,

     v.                                           ORDER

SWISS ARMY BRANDS, INC.,
et al.,

          Defendants.



          Both defendant Swiss Army Brands and defendant Vessel Services Inc. have filed

motions to dismiss on statute of limitation grounds.  They contend that the allegations

in the complaint constitute a claim for personal injury arising out of a "maritime tort"

and that Rand's claims are therefore barred under the three year statute of limitations

for maritime torts set forth in 46 U.S.C. App. § 763a.  The alleged incident took place on

December 20, 1999, Complaint ¶ 8, and this action was filed on June 10, 2005.  As a

result, if a three year statute of limitations is applicable, this lawsuit is time barred.

          Rand does not disagree that if a maritime tort is involved, the federal three-year

statute of limitations would apply.  He argues, however, that he is not alleging a

maritime tort because the complaint does not fall within the test for admiralty

jurisdiction under Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S.

527 (1995).[1]

---

[1] Although a motion to dismiss is ordinarily addressed solely to the pleadings, plaintiff submitted an
affidavit with his original opposition to the motion on October 3, 2005 and therefore submitted a
supplemental affidavit on January 12, 2006.  Defendants have not objected to these submissions, and the
issue of subject matter jurisdiction is not an issue that depends solely on the pleadings.  See Grubart, 513

At the outset, it does not appear to be disputed that a "maritime tort" within the meaning of 46 U.S.C. App. § 763a is a tort for which admiralty jurisdiction would exist. See Butler v. American Trawler Co., Inc., 887 F.2d 20, 21 (1ˢᵗ Cir. 1989) (Breyer, J.). The current test for admiralty tort jurisdiction, as set forth in the U.S. Supreme Court's Grubart decision, is whether the tort occurred on the navigable waters of the U.S. (the location test) and whether the tort bears a significant relationship to traditional maritime activity (the connection test). See 513 U.S. at 531-34. There appears to be no dispute that the location test is satisfied here based on the allegations in the complaint. Complaint ¶ 8.

With respect to the connection test, Grubart requires (1) that the incident have a potentially disruptive effect on maritime commerce and (2) that the general character of the activity giving rise to the incident show a substantial relationship to traditional maritime activity. 513 U.S. at 534. With respect to whether this incident has a relationship to traditional maritime activity, reasonable arguments can be made on both sides. Defendants argue with some force that using a knife "during routine lobstering operations" (Complaint ¶ 8) sounds pretty maritime. Plaintiff argues, however, that the knife was also used ashore and could just as easily have snapped when he was cutting rope in his workshed on land. Moreover, looking at the activity giving rise to the incident from defendants' point of view, making and selling knives is not an activity that is necessarily nautical in nature.

---

U.S. at 537 (jurisdiction usually established at the outset by pleadings, but contested jurisdictional facts can be litigated in a summary procedure before the court). The court would note, however, that plaintiffs did not request leave to file their January 12ᵗʰ supplemental affidavit and that this affidavit was filed several months after the court took the case under advisement. The court will therefore disregard the supplemental filing. Motion practice is not a free-for-all where parties are entitled to make additional filings whenever a new argument occurs to them or new information comes into their possession. At a minimum, leave of court is required.

2

The court does not have to resolve this issue because <u>Grubart</u> also requires that the incident in question have a potentially disruptive effect on maritime commerce. 513 U.S. at 534, 538-39.[2] Defendants have offered no argument on this issue, and the court cannot find any potential disruption that would satisfy this requirement.

The entry shall be:

The motions to dismiss filed by defendant Vessel Services Inc. and by defendant Swiss Army Brands, Inc. are denied. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February _9_, 2006

_____
Thomas D. Warren
Justice, Superior Court

---

[2] This prong of the connection analysis postdates the First Circuit's decision in <u>Butler</u>.

3

CLERK OF COURTS
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

RONALD COLES, ESQ.
PO BOX 1028
KENNEBUNK, ME 04043

CLERK OF COURTS
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

JAMES CAMPBELL, ESQ.
1 CONSTITUTION PLAZA
BOSTON, MA 02129

Def. Swiss Army

Portland, Maine 04112-0287

Def. Vessel

BARRI BLOOM, ESQ.
PO BOX 9545
PORTLAND, ME 04112-9545

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. CV-05-403

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2007 MAR -8 P 2: 00

MARK RAND,

        Plaintiff,

v.                                                ORDER

SWISS ARMY BRANDS,

        Defendant.


Before the court is a motion for summary judgment by defendant Swiss Army
Brands. Swiss Army Brands is seeking to dismiss a one count strict liability complaint
brought pursuant to 14 M.R.S. § 221 in which plaintiff Mark Rand alleges that Swiss
Army Brands marketed a defective knife that was unreasonably dangerous to
consumers and that broke, causing injury to his eye.

Summary judgment should be granted if there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law. In considering a
motion for summary judgment, the court is required to consider only the portions of the
record referred to and the material facts set forth in the parties' Rule 56(h) statements.
E.g., Johnson v. McNeil, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. The facts must be
considered in the light most favorable to the non-moving party. Id. Thus, for purposes
of summary judgment, any factual disputes must be resolved against the movant.
Nevertheless, when the facts offered by a party in opposition to summary judgment
would not, if offered at trial, be sufficient to withstand a motion for judgment as a
matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME
99 ¶ 8, 694 A.2d 924, 926.

At the time the motion was filed, there was a procedural controversy between the parties. Rand's counsel contended that Swiss Army did not timely respond to Rand's opposition papers. Swiss Army's counsel contacted the clerk's office to state that Swiss Army had never received Rand's opposition papers. The court instructed the clerk to advise counsel for Swiss Army to file its reply papers as soon as possible. Thereafter, after considering the respective contentions of the parties as set forth in letters dated August 4 and August 8, 2006 the court concluded that Swiss Army had at least met the excusable neglect standard in M.R.Civ.P. 6(b) and ruled that it would consider the motion on its merits including Swiss Army's reply papers. See Order dated August 11, 2006 n.1.[1]

Undisputed Facts

Accepting plaintiff's version of the facts in the event of any factual disputes and considering the facts in the light most favorable to plaintiff, the summary judgment record establishes that on December 20, 1999, Rand was using a knife marketed by Swiss Army when the blade broke and a piece of the blade struck his right eye. Plaintiff's Additional Statement of Material Facts (ASMF) ¶ 52. In support of his contention that Swiss Army marketed the knife in question (model no. 40603) "in a defective condition unreasonably dangerous to a user or consumer," see 14 M.R.S. § 221, Rand primarily relies on the testimony of Fredrick Hochgraf, an expert metallurgist.

---

[1] There have been other mailing problems in this case. For example, the court file contains a letter from plaintiff's counsel that was dated April 3, 2006 but was not received until May 16, 2006. Indeed, the original letter for plaintiff's counsel complaining that Swiss Army did not reply to Rand's opposition papers is dated July 27, 2006 but was not received by the clerk's office until August 28, 2006.

Hochgraf testified at his deposition that the knife broke because it was overstressed, and he testified that the knife could have been made stronger with a small increase in thickness. Hochgraf Dep. 178, 167. He testified that there were no manufacturing or metallurgical defects in the knife. Hochgraf Dep. 51, 178-79. He further testified that the polypropylene handle had no deleterious effects on the steel of the blade and that the temperature reached during the molding process did not adversely affect the temper of the steel. Id. 91.

Hochgraf stated that "a portion" of the knife's failure was due to a design defect. Id. 51. However, asked directly what design defects there were with respect to the knife, Hochgraf answered as follows:

> That's whether the – the knife was strong enough for the
> service it's being sold into.

Id. 179. Hochgraf also testified that "there are applications in which this knife is a hundred percent satisfactory, and there are applications in which the knife is a hazard." Although expressing the opinion that the knife should not be used in high stress applications, id. 99, Hochgraf stated that he had not analyzed the use of the knife with respect to any specific applications. Id. 104.

While expressing the view that the issue that needs to be resolved is whether the knife is sufficiently strong for the market into which it was being sold, Hochgraf stated unequivocally that he had not formed an opinion on that subject. Hochgraf Dep. 181.

Asked by plaintiff's counsel whether a knife marketed as a paring or vegetable knife would be appropriate in the commercial fishing industry, Hochgraf did not offer an opinion. Id. 193. Asked if there was an alternative design that would have been appropriate for the commercial fishing industry, Hochgraf said only, "thicker would be stronger." Id.

3

Hochgraf testified that he has not done any research into the area of warnings, their effectiveness, or how people respond to warnings, and he has not offered any opinions about warnings in this case. Hochgraf Dep. at 79-80, 191-92. He also testified that he has no expertise in aspects involving human factors. Id. 191.

The summary judgment record also contains evidence that Swiss Army marketed the Model No. 40603 knife as a paring knife suitable for vegetables and that a division of Swiss Army also marketed a group of Victorinox knives, including the Model No. 40603, as "our most popular commercial fishing knives" and "the best knife for boat, gear, and deck work." Plaintiff's ASMF ¶¶ 21, 22 and Exhibits B and C thereto (Bates Stamp 00373).

The evidence in the summary judgment record from Mark Rand is that he did not obtain any specific information about the Model No. 40603 knife before his accident, and he never saw any advertisements or promotional materials before purchasing it. Defendant's SMF ¶ 20. Rand stated that the Model No. 40603 was one of the knives in a display case at Vessel Services, a vendor to commercial fisherman. Rand Dep. 62; Defendant's Response to Plaintiff's ASMF ¶ 35.

Rand has used Model No. 40603 knives since 1985. Plaintiff's ASMF ¶ 43. The knife has had a range of uses in his fishing operations – for shop use, maintenance, gear use, cutting rope – "what we've been doing with them for the last 20 years." Rand Dep. 68. He testified that he would not use a Model 40603 knife to cut a large diameter line – "a big piece of rope." Id. 49. Rand testified that of the various knives available at Vessel Services, he made the choice as to which knife to pick. Id. 113.

Rand further stated his opinion that the problem with the Model 40603 was that it was being sold for work in the fishing industry and the knife "couldn't do what it was

4

represented to do" and "didn't meet their qualification at this point in time." Rand Dep. 98.

Rand testified he was aware of 3-10 prior instances in which a Model No. 40603 knife had broken in the course of commercial fishing operations. He had seen one of those instances himself and had been told of other instances. Rand Dep. 44-47.

Discussion

Liability in this case is premised on Maine's strict liability statute, which provides:

> One who is selling any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller, or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user and consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221. This statute was taken directly from section 402A of the Restatement (Second) of Torts. See Bernier v. Raymark Industries, Inc., 516 A.2d 534, 537-38 (Me. 1986).

Under Restatement § 402A and the statute, a product may be in a defective condition because of a defect in the manufacturing process, because of a defect in design, or because of a failure to warn of a product hazard. Bernier, 516 A.2d at 437 n.3.

5

Rand does not contend there was a manufacturing defect but relies instead on alleged defectiveness in design and upon a failure to warn of a product hazard.[2]

On plaintiff's claim of defective design, plaintiff has failed to generate a disputed issue for trial as to the existence of a design defect. First, there is a substantial question whether the equivocal testimony of plaintiff's expert, combined with his failure to offer opinions on salient issues in the case, is sufficient to meet plaintiff's burden of demonstrating the existence of disputed issues for trial as to the existence of a design defect.

Second, even overlooking the sketchiness of plaintiff's evidence, it appears to be misdirected. Plaintiff's expert opined that at "portion" of the knife's failure was due to a design defect, but when asked to specify the defect, he responded that the question was whether the knife was strong enough for the market into which it was sold. Hochgraf Dep. 51, 179, 181. This is not a design defect but a question of suitability. It is also a question on which plaintiff's expert stated he had not formed an opinion. Id. 181. Plaintiff's expert also stated that there were no defects in the design of the Model No. 40603 knife as a paring knife. Id. 185.

As noted in Restatement 3d of Torts: Product Liability, § 1 comment a, if design defects or defects based on inadequate warnings are found to exist, "then every unit in the same product line is potentially defective." In other words, a claim of defective design under Restatement § 402A and 14 M.R.S. § 221 requires that the design of a knife be <u>inherently</u> defective, not merely defective for some uses while perfectly adequate for

---

[2] In his counsel's memorandum opposing summary judgment, Rand indicates at one point that he is relying on alleged manufacturing and design defects rather than on a failure to warn. See Plaintiff's Memorandum of Law in opposition to motion for summary judgment, dated July 10, 2006, at 4. However, the remainder of his memorandum addresses alleged defective design and an alleged failure to provide warnings and omits any argument with respect to manufacturing defects. Moreover, the summary judgment record does not present any disputed issues for trial as to the existence of any manufacturing defect.

others. The question of whether the Model No. 40603 knife is adequate for commercial fishing uses may raise an issue as to whether Swiss Army's misrepresented the suitability of the knife – a subject discussed further below in connection with Restatement 2d Torts § 402B – but does not raise a triable issue of fact under 14 M.R.S. § 221 and Restatement 2d Torts § 402A.

Plaintiff's claim that the knife was defective because it was not accompanied by a warning fails for the same reason – the warning sought by plaintiff is that the Model 40603 knife was not suitable for commercial fishing. This constitutes a misrepresentation claim rather than a section 221 claim. See Restatement 3d Torts: Product Liability § 1, comment a (quoted above), noting that defective warning claims like defective design claims must apply to every unit in the same product line.

Plaintiff's failure to warn claim has several another other difficulties. First, he has offered no expert testimony in support of that claim. Second, even assuming that expert testimony would not be necessary, a duty to warn only arises when the manufacturer or distributor "knew or should have known" of a danger sufficiently serious to require a warning. Pottle v. Up-Right Inc., 628 A.2d 672, 675 (Me. 1993); Bernier v. Raymark Industries Inc., 516 A.2d at 540. In opposition to Swiss Army's motion for summary judgment, Rand has not offered any evidence that generates a disputed issue for trial on whether Swiss Army knew or had reason to know of the need for a warning.

The overall problem with all of plaintiff's arguments is that they are based on the theory that Swiss Army promoted the Model No. 40603 knife for commercial fishing uses for which it was allegedly unsuitable. See Plaintiff's July 10, 2006 Memorandum of Law in Opposition to Motion for Summary Judgment at 5-6:

> Swiss Army sold the Model No. 40603 knife as a commercial
> fishing knife, for all deck and gear uses, knowing it was
> merely a thin-bladed kitchen paring knife with limited

7

> strength . . . Swiss Army could have warned, but failed to do, that the knife had limited uses, lacked the strength for heavy-strength use, and should not have been used as a "gear" knife in the commercial fishing industry . . . Swiss Army deliberately marketed the flimsy kitchen knife for heavy-duty commercial use.[3]

A claim that Swiss Army promoted the Model No. 40603 knife for commercial fishing activities for which that knife was unsuitable and dangerous to the user is a claim that, although not cognizable under Restatement § 402A, may be cognizable were Restatement 2d Torts § 402B.[4] However, the court is not prepared to allow this action to proceed under § 402B for two reasons. First, at this point in the case, where plaintiff has relied solely on section 402A and 14 M.R.S. § 221 in his pleadings, where all discovery is concluded, and where a motion for summary judgment has been filed, the court will not on its own motion allow plaintiff to switch horses in midstream and proceed under section 402B.

Second, section 402B requires justifiable reliance upon a defendant's misrepresentation. Indeed, one of the reasons to require a plaintiff to proceed under section 402B when he is alleging that a product is not suitable for its advertised purposes is that, if he were allowed to proceed under section 402A, he would escape the requirement of proving justifiable reliance.

---

[3] Plaintiff's memorandum also contends that Swiss Army knew from previous experience that the blade of the Model 40603 knife would break and that plaintiff relied on Swiss Army's promotion that the knife was suitable for work on a commercial fishing boat. Id. The court disregards those statements because the summary judgment record does not demonstrate any prior knowledge by Swiss Army that the knife would break and because plaintiff's allegations that Rand relied on Swiss Army's promotions is contradicted by the record. See Rand Dep. 63-65; see also the admissions in plaintiff's own additional statement of material facts. Plaintiff's ASMF ¶¶ 46, 49.

[4] Restatement 2d Torts § 402B provides as follows:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character of quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though (a) it is not made fraudulently or negligently; and (b) the consumer has not bought the chattel from or entered into any contractual relations with the seller.

In this instance, the summary judgment record refutes any claim of justifiable reliance on any misrepresentation by Swiss Army. Plaintiff did not see or receive any advertising or marketing information with respect to the Model No. 40603 knife. Defendant's SMF ¶ 20; plaintiff's ASMF ¶¶ 46, 49. Even if plaintiff were permitted to change theories at this point in the case, therefore, Swiss Army would be entitled to summary judgment on any misrepresentation claim under Restatement § 402B.

The entry shall be:

Defendant's motion for summary judgment dismissing the complaint is granted for the reasons set forth in this order. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:      March __8__, 2007

Thomas D. Warren
Justice, Superior Court

COURTS
ıd County
ıx 287
ə 04112-0287

RICHARD CAMPBELL ESQ
MICHELLE SCHAFFER ESQ
CAMPBELL CAMPBELL EDWARDS & CONROY
ONE CONSTITUTION PLAZA
BOSTON MA 02129

COURTS
I County
287
04112-0287

RONALD COLES ESQ
PO BOX 1028
KENNEBUNK ME 04043