STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
SUPERIOR COURT
CLERK'S OFFICE

2008 FEB 14 P 3: 25

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-04-141

JOSEPH MAHONY,

     Plaintiff,

  v.                          ORDER

OWEN B. PICKUS, et al.,

     Defendants.

Before the court are (1) a motion for summary judgment on behalf of defendants Owen Pickus and Maine Centers for Healthcare, (2) a motion for summary judgment by defendant Robert Neilson incorporating the statement of material facts submitted by Dr. Pickus, (3) a motion *in limine* by defendant Robert Neilson to exclude the opinion of plaintiff's expert as to Dr. Neilson, and (4) a second motion for summary judgment by Dr. Neilson seeking dismissal based on the absence of expert testimony in the event his motion *in limine* is granted.[1]

1.    <u>Summary Judgment</u>

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes

---

[1] There is an additional motion pending that is not addressed in this order – a motion by Dr. Neilson (joined in by Dr. Pickus and Maine Centers for Healthcare) to exclude pecuniary loss testimony from Allan McCausland. That motion is still under advisement.

of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

2.    Claims Against Dr. Pickus[2]

In connection with the motion by Dr. Pickus, the court has reviewed the parties' memoranda of law, their statements of material facts, and (where disputed and material) the respective portions of the record cited by the parties. It concludes that on the summary judgment record before the court there are disputed facts for trial as to at least the following issues:

1. Whether in taking Julia Mahony's patient history in June 2002, Dr. Pickus adequately inquired about HIV or HIV risk factors;

2. Whether, if Dr. Pickus made such an inquiry, he should have been satisfied with Julia Mahony's responses as he reported them in light of the other information he had and the 10 month time lag since any HIV test that might have occurred in September 2001;

3. Whether information which came to Dr. Pickus's attention after June 2002 should have caused him to reconsider an HIV diagnosis and recommend a test;

4. Whether Julia Mahony would have declined an HIV test if one had been suggested in June, July, or August 2002.[3]

---

[2] Defendant Maine Centers for Healthcare is named in the complaint as Dr. Pickus's employer. It is represented by the same counsel as Dr. Pickus and, as far as the court is aware, would only be liable to the extent that Dr. Pickus is liable. Any reference in this order to Dr. Pickus applies equally to Maine Centers for Healthcare.

[3] Embedded in the issues outlined in paragraphs 1 and 4 above is the further issue of whether in June, July, or August 2002, Julia Mahony knew, suspected, had been informed, or understood that she was HIV positive. On the original summary judgment record, the court would agree this is a disputed issue for trial. With Dr. Pickus's reply statement of material facts, however,

2

5. Whether, if diagnosed with AIDS in June, July or August 2002, the outcome of Julia Mahony's treatment would have been at least marginally and perhaps significantly better.

On all these issues, without in any way predicting how a fact-finder would decide, the court concludes that – with all facts and inferences taken in the light most favorable to plaintiff – plaintiff has demonstrated that sufficient factual disputes exist to preclude summary judgment. The court is aware that there is evidence in the record that Julia Mahony had been informed of her HIV status in 1988, that subsequently (aside from what she may or may not have told Dr. Pickus) she had told various doctors that she had been tested and found to be HIV negative, and that she declined an HIV test on August 1, 2002. Finally, by statute, Dr. Pickus could only have given Julia Mahony an HIV test if she had consented. 5 M.R.S. § 19203-A. Nevertheless, whether summary judgment should be granted does not depend on the weight of the evidence but only on whether material factual disputes exist. Accordingly, the motion for summary judgment by Dr. Pickus is denied.

2. Claim Against Dr. Neilson

A closer question is presented by the motion filed by Dr. Neilson raising the same arguments as Dr. Pickus. As compared to Dr. Pickus, Dr. Neilson had far less involvement with Julia Mahony's care. In fact, the sole basis for plaintiff's claim against

---

Dr. Pickus submitted Red Cross records that (if proper foundation is laid for admission) may resolve this issue. The court agrees with plaintiff, however, that the substance of these records was not offered in an admissible form in the original moving papers submitted in support of the motion. Moreover, the court cannot determine that facts are undisputed based on materials submitted for the first time in reply papers to which the other party does not have a chance to respond. Finally, even if the court were to assume that Julia Mahony had been informed of and understood her HIV status, plaintiff still has raised disputed issues of fact for trial as to Dr. Pickus's alleged failure to focus on HIV in the summer of 2002. Finally, the court cannot decide any comparative negligence issue on summary judgment.

3

Dr. Neilson is that Dr. Neilson failed to read and act on the notation "HIV screen" which appears in typewritten August 1, 2002, consultation note from an infectious disease specialist (Dr. Robert Smith) but which does not appear on Dr. Smith's handwritten progress note from the same date.

Dr. Neilson points out Dr. Smith's testimony that Dr. Smith suggested an HIV test to Julia Mahony on August 1, 2002, the same date that he wrote his consultation note, and Mrs. Mahony did not consent to such a test at that time. This raises the question whether there is a really disputed issue for trial as to whether Julia Mahony, having just declined Dr. Smith's suggestion, would have changed her mind and consented to an HIV test if approached by Dr. Nielson immediately thereafter.[4]

The court does not have to decide this issue, however, because the factual assertion that Mrs. Mahony had declined Dr. Smith's request for an HIV test on August 1, 2002 was not advanced in any of the moving papers and first appeared in Dr. Neilson's Reply Statement of Material Facts. The court cannot grant summary judgment based on facts which the opposing party has not had an opportunity to dispute.

3.    Dr. Neilson's Motion *in Limine* to Exclude Opinion of Dr. Appelbaum

The second motion before the court is Dr. Neilson's motion to exclude Dr. Appelbaum's opinion that Dr. Neilson violated the applicable standard of care.

On this motion the court has considered the opinions and deposition testimony of Dr. Appelbaum as it relates to his opinion with respect to Dr. Neilson and concludes that Appelbaum's opinion with respect to Dr. Neilson's alleged departure from the standard of care should not be excluded.

---

[4] Moreover, Dr. Neilson had no further involvement with Mrs. Mahony's care once she was released from the hospital a few days later.

4

This is true for two reasons. First, although Dr. Appelbaum is not a surgeon and therefore would be ill-equipped to offer expert opinions as to surgical issues, the opinion he is offering here does not relate to surgical issues but to the standard of care of an attending physician. At the time Dr. Neilson allegedly committed malpractice, he was acting as Julia Mahony's attending physician when she was readmitted to the hospital for post-surgical complications. On this issue, Dr. Appelbaum is competent to testify.[5]

Second, the other objections raised to Dr. Appelbaum's testimony – including (1) the fact that Dr. Appelbaum was unaware until his deposition that, although "HIV screen" was included among the suggestions in Dr. Smith's typewritten consultation note, HIV was not mentioned in Dr. Smith's handwritten progress note of the same date[6] and (2) the fact that Dr. Appelbaum had at one point unsuccessfully sought guidance on the standard of care applicable to Dr. Neilson from the medical literature and an insurance company executive – go to his credibility and the reliability of his opinion rather than to his expertise.

The court is mindful with respect to its role as a gatekeeper with respect to expert testimony but that does not allow it in a jury trial to usurp the role of determining

---

[5] In reaching his opinions, Dr. Appelbaum relies in part on section 3-8.3(C) of Mercy Hospital's bylaws and regulations. That section speaks to the situation where an attending physician "elects not to follow the advice of a consultant." In this case plaintiff is not alleging that Dr. Neilson elected not to follow Dr. Smith's advice. Instead, plaintiff is contending that Dr. Neilson should have read Dr. Smith's typewritten consultation note and not just Dr. Smith's handwritten progress note. Section 3-8.3(C) may suggest the general importance of considering a consultant's advice, but it does not resolve whether under the specific circumstances of this case Dr. Neilson's failure to read and act on the typewritten consultation note violated the standard of care. Plaintiff's ability to offer evidence on the standard of care applicable to Dr. Neilson thus depends on Dr. Appelbaum's qualifications to offer testimony as to the standard of care applicable to attending physicians and not on the Mercy Hospital bylaws and regulations.

[6] Until that point Dr. Appelbaum had focused on the importance of progress notes and opined that the progress note should have contained any communication between the consulting physician and the attending physician. Dep. 127.

5

credibility with respect to an opinion that an expert is otherwise qualified to render. The core issue against Dr. Neilson is not "junk science" but whether it was a departure from the standard of care for Dr. Neilson as an attending physician (1) to read Dr. Smith's handwritten progress report and not read the typewritten consultation note and also (2) to rely on Dr. Smith's expertise with respect to infectious diseases and on the fact that Dr. Smith had taken the initiative to order various tests on his own. This is an issue that should be decided by the trier of fact.

4.    Dr. Neilson's Motion for Summary Judgment Based on the Absence of Expert Testimony

Dr. Neilson's remaining motion for summary judgment was conditioned upon the granting of his motion to exclude Dr. Appelbaum's testimony. That motion is moot in light of the ruling that Dr. Appelbaum's opinion shall not be excluded.

The entry shall be:

The motions for summary judgment by defendants Pickus, Maine Centers for Healthcare, and Neilson are denied. The motion *in limine* by defendant Neilson to exclude the testimony of plaintiff's expert as against Neilson is also denied. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:    February _14_, 2008

Thomas D. Warren
Justice, Superior Court

6

x 287
04112-0287

*plaintiff*

PAUL MCDONALD ESQ
PO BOX 9729
PORTLAND ME 04104

04112-0287

DYP
Pickus &
Me CTRS FOR
HEALTH CARE

DANIEL RAPAPORT ESQ
PO BOX 9546
PORTLAND ME 04112

nd County
3ox 287
ie 04112-0287

WENDELL LARGE ESQ
PO BOX 9545
PORTLAND ME 04112

DY. Neilson