STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAY 26 2010

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-09-263
TDW - CUM - 5/26/2010

DEREK ROBISHAW,

Plaintiff,

v.                                                    ORDER

WELLS FARGO BANK, et al.,

Defendants.

Before the court are motions for summary judgment filed by defendants Wells Fargo Bank, American Home Mortgage Servicing (AHMS), and Bryce Hamilton. Wells Fargo and AHMS are represented by the same counsel and have filed a joint motion.

1.    Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

2. <u>Undisputed and Disputed Facts</u>

In this case plaintiff Derek Robishaw, whose residence was the subject of a foreclosure judgment on April 26, 2007, is suing defendants for illegal eviction, breach of warranty of habitability, breach of warranty of quiet enjoyment, trespass, conversion, negligent destruction of personal property, and negligent infliction of emotional distress. He also seeks punitive damages.

A large number of facts are undisputed:

Robishaw originally executed a mortgage and promissory note in favor of Option One Mortgage Corp. in 2004. The mortgage covered his residence at 5 Shady Lane in Falmouth. Option One later assigned the mortgage and note to Wells Fargo but continued to service the mortgage for some period of time thereafter. AHMS subsequently became the mortgage servicer, but not until foreclosure proceedings were underway.

At some point Robishaw ceased to make mortgage payments and Wells Fargo commenced a foreclosure action in the Portland District Court in August 2006. The District Court entered a foreclosure judgment in favor of Wells Fargo in April 26, 2007. No appeal was filed and following the expiration of the statutory redemption period, Wells Fargo scheduled a public auction for October 2007. Robishaw was aware of the sale and the sale date but did not attend. At the sale, Wells Fargo was the highest bidder, and the property was sold to Well Fargo.

On October 26, 2007 the District Court issued a writ of possession. Despite several attempts, the writ was never served.

There is a dispute as to whether Robishaw and his family intended to abandon the 5 Shady Lane property, but they at least obtained interim alternative housing in November 2007 by entering into a 19 month lease on a residence on Rebecca Way in

2

Falmouth. By late December 2007, although they testified that they eventually hoped to return to 5 Shady Lane, the Robishaws had moved into the Rebecca Way residence and were residing there full time. From then until February 2008 Robishaw continued to return to 5 Shady Lane every week or so to gather certain of his personal property and move it to Rebecca Way.

As of February 2008 certain of the Robishaws' personal property remained at 5 Shady Lane. Robishaw had not signed any lease permitting him to keep his property at 5 Shady Lane, and he was not making any rent or other payment to store possessions in or otherwise occupy the 5 Shady Lane property. In addition, he had not had any discussions with Wells Fargo, AHMS or with Hamilton about remaining in the property.

Hamilton is a real estate agent affiliated with Coldwell Banker, which was hired by Option One (before the latter was replaced as servicer by AHMS) to determine the occupancy status of 5 Shady Lane, to change the locks, and prepare the property for resale. Hamilton had originally reported in October 2007 that the property still appeared to be occupied but he reported in February 2008 that he believed it was unoccupied and he then arranged for the locks to be changed. At that time, Hamilton was aware that 5 Shady Lane still contained personal property belonging to the Robishaws and he told Option One or AHMS that further notification to the Robishaws might be needed.

Robishaw returned to the property in late February 2008 and found the locks changed but gained access to the house through a kitchen window.[1] In April 2008, when he again returned to the property, Robishaw discovered several inches of standing water in his basement, soaking certain of his belongings that were still on the

---

[1] Robishaw later changed a side door lock to gain continued access to the property.

property. Robishaw surmises that Hamilton or one of his agents had turned off the circuit breakers, including one that powered a basement sump pump. Hamilton had hired a vendor to change the locks, winterize the property, and drain the pipes. However, he denied that he ever gave any instruction to shut off the power, and there is no evidence to the contrary. There is also no evidence as to whether the circuit breakers were intentionally turned off or whether they tripped for some other reason.

After discovering standing water in the basement in February, Robishaw continued removing a few items at a time. He communicated with both Wells Fargo (through an attorney) and with Hamilton to complain about the standing water. His complaint to Hamilton occurred after Hamilton sent Robishaw a letter in May 2008 advising him he had 30 days to remove all his property or it would be disposed of. Hamilton sent Robishaw a second letter to the same effect in September 2008, this time with a September 30, 2008 deadline. After receiving that letter, Robishaw called Hamilton and demanded compensation. Some time later that fall Robishaw returned to the property and found that items of his personal property had been placed out on the lawn. There is no specific evidence as to who placed the belongings on the lawn.

In November the Robishaws discovered two men removing items belonging to them from the garage at 5 Shady Lane. Confronted by the Robishaws, the men stated they had been hired to clean out the garage and take the items to the dump. The two men called for instructions. This eventually led to a phone call from Stephen Schariff, an employee of Field Asset Services (a field preservation service working for AHMS), to Hamilton. Hamilton told Schariff that there was a dispute with the Robishaws and advised him that things needed to be left where they were. At that point the property was returned to the garage, and the Robishaws continued to remove items.

4

There is no evidence to controvert Hamilton's affidavit that he did not remove any items from 5 Shady Lane or have any role in the removal of such property by others. Hamilton was generally aware that when AHMS took over from Option One, AHMS had hired Field Asset Services to perform property maintenance services and that Field Asset Services had hired local vendors to engage in property maintenance work without consulting Hamilton. Robishaw Statement of Additional Facts in response to Hamilton's Motion ¶ 6, Hamilton Reply SMF 6; Hamilton Dep. 79.

3. Illegal Eviction

Whether Robishaw's claim for illegal eviction survives summary judgment depends on whether there is sufficient evidence, taken in the light most favorable to Robishaw, from which a jury could find that Robishaw was a tenant at will (as he contends) or whether he was at most a tenant at sufferance (as defendants contend).

Under the foreclosure statutes, Robishaw's right to possession terminated upon expiration of the redemption period. 14 M.R.S. § 6323(1) ("upon expiration of the period of redemption, if the mortgagor . . . [has] not redeemed the mortgage, any remaining rights of the mortgagor to possession terminate"). That same statute also provides that a sale at public auction "conveys the premises free and clear of all interests of the parties in interest joined in the action". Given that Wells Fargo's right of possession had already been resolved, defendants were not required to commence a separate forcible entry and detainer action against Robishaw after the period of redemption expired and after the public sale. In fact, Wells Fargo obtained a writ of possession within the foreclosure action.

Under Maine law, a tenancy at will arises when a party holds possession of premises by permission of the owner but without a fixed term. *Frost Vacationland*

5

*Properties Inc. v. Palmer*, 1999 ME 15 ¶ 10, 723 A.2d 418, 421. The permission may be express or implied. *See, e.g., Perley v. Chase*, 79 Me. 519, 521-22, 11 A. 418, 419 (1887). Absent such permission, when a party such as a mortgagor comes into possession by lawful title but retains possession longer than he has any right, that party is a tenant at sufferance. *Irving Oil Corp. v. Maine Aviation Corp.*, 1998 ME 16 ¶ 7, 704 A.2d 872, 874; *Perley v. Chase*, 79 Me. at 521-22, 11 A. at 419.

*Perley v. Chase* can be read to suggest that leaving a tenant at sufferance in possession for an extended possession may convert a tenancy at sufferance into a tenancy at will. *See McFarland v. Stewart*, 142 Me. 265, 267, 50 A.2d 194, 196 (1946) (tenancy at will may be "created by the lapse of time"). While the failure to take any action to disturb Robishaw's occupancy over a sufficient of time could, in the absence of any contrary evidence, support an inference of acquiescence, that is not the situation in this case. The undisputed evidence here is that Wells Fargo and its agents took action that refutes any inference that Wells Fargo had impliedly agreed to Robishaw's continued possession.

First, Wells Fargo obtained a writ of possession and attempted to serve the writ. Even though Wells Fargo was not successful in effecting service, this does not constitute implied agreement to Robishaw's continued possession.[2] Second, Hamilton arranged for the locks to be changed. Third, Hamilton sent two letters to Robishaw instructing him to remove his remaining property. Finally, after Robishaw had not removed his property in response to Hamilton's second letter, persons apparently retained or employed by Field Asset Services placed some of Robishaw's possessions out on the lawn. Given those facts, which are undisputed, there is no basis to find that there is a

---

[2] This might be a different case if Robishaw offered evidence that Wells Fargo had made a decision not to serve the writ in order to allow him to remain in the premises.

6

factual dispute for trial as to the existence of an implied agreement to allow Robishaw to remain in possession.

On this record, therefore, the undisputed facts establish that Robishaw was not a tenant at will but a tenant at sufferance. Tenants at sufferance are not entitled to a notice to quit under 14 M.R.S. § 6002. *Irving Oil Corp. v. Maine Aviation Corp.*, 1998 ME 16 ¶ 8, 704 A.2d at 875. In addition, Maine's FED statute is only available against disseisors, against tenants holding a written lease, against tenants whose occupancy is incidental to employment, against tenants at the expiration of a lease if the action is brought within 7 days of the expiration, against tenants at will, and against tenants in mobile home parks. 14 M.R.S. § 6001(1). Robishaw does not fall into any of those categories.[3]

Since a forcible entry and detainer remedy was not available under § 6001(1), defendants cannot be held liable for illegal eviction under § 6014. The latter section governs "evictions that are effected without resort to the provisions of this chapter." § 6014(1). If Wells Fargo could not properly resort to the provisions of the chapter, it cannot be found liable for failing to do so. Accordingly, defendants are entitled to summary judgment on Robishaw's illegal eviction claim.

This is true even though the writ of possession that Wells Fargo obtained was never served. Shortly after the writ of possession issued, Robishaw and his family signed a lease for alternative housing on Rebecca Way, and it is undisputed that by December 2007 the Robishaws began residing full time at the Rebecca Way residence – leaving only certain of their belongings at 5 Shady Lane. At that point, since the Robishaws had physically vacated the premises and were no longer residing there,

---

[3] Robishaw was not a disseisor because a disseisor is one who enters another's land intending to usurp possession and to oust the other of his freehold. *First Vacationland Properties Inc. v. Palmer*, 1999 ME 15 ¶ 11, 723 A.2d at 421.

service of a writ of possession was unnecessary. The FED statute contemplates that in certain circumstances property belonging to a former occupant may remain on the premises even though the former occupant has vacated the premises. *See* 14 M.R.S. § 6013 (any property valued in excess of $750 that is abandoned by a tenant "following the tenant's vacating the rental unit" must be disposed of according to Title 33). In other words, an occupant may "vacate" a premise even if certain property remains behind. That is the situation in this case.

Although the facts here do not permit a finding that an illegal eviction within the meaning of § 6014 occurred, that does not mean that defendants did not owe the Robishaws any duty with respect to the property that the Robishaws left behind. That issue will be considered below in connection with Robishaw's conversion and negligent destruction of property claims.

4.    Habitability, Quiet Enjoyment, and Trespass

Robishaw's status as tenant at sufferance disposes of his claims for breach of warranties of habitability and quiet enjoyment and his trespass claim. Under Maine law, there is an implied warranty of fitness for human habitation "in any written or oral agreement for rental of a dwelling unit." 14 M.R.S. § 6021(2). Here there was no written or oral rental agreement. The existence of a covenant of quiet enjoyment also depends on the existence of a lease or on the existence of a tenancy incident to employment. *See Botka v. S.C. Noyes & Co.*, 2003 ME 128 ¶ 15, 834 A.2d 947, 952; *State v. DeCoster*, 653 A.2d 891, 894 (Me. 1995). Finally, Robishaw's trespass claim must fail because after foreclosure and the subsequent public auction, Wells Fargo and its agents were fully entitled to enter onto the 5 Shady Lane property. *See, e.g.*, Restatement (Second) Torts § 185 ("A person entitled as owner to the immediate possession of land,

8

which is in the possession of another, who enters or remains on the land, does not thereby subject himself to liability for trespass on land.").[4]

5.     Conversion

Regardless of Robishaw's status as at best a tenant at sufferance, defendants may be liable if they converted his property. In his complaint Robishaw alleges that a conversion occurred when Hamilton arranged for the locks to be changed, thereby denying Robishaw access to his property.[5] In response to defendants' motions for summary judgment, Robishaw also alleges that a conversion occurred when his property was put out on the lawn.

A party bringing a conversion claim must demonstrate that he has an ownership interest in the property, that he has the right to possession of the property, and that another party has intentionally dispossessed him of the property or has intentionally disposed of the property. *See* Restatement (Second) Torts §§ 221, 222A. In addition, where the party charged with conversion has acquired possession rightfully, a demand by the person entitled to possession and a refusal to surrender is also required. *See Doughty v. Sullivan*, 661 A.2d 1112, 1122 (Me. 1995).

Changing the locks in this case did not amount to a conversion for two reasons. First, Wells Fargo and Hamilton as its agent rightfully acquired possession of the

---

[4] Even before foreclosure Wells Fargo as mortgagee and its agents would have been entitled to enter the premises absent some agreement or contractual provision to the contrary. *E.g.*, 33 M.R.S. § 502. Robishaw has the burden of proof on this issue and he has offered no evidence of any provision forbidding the mortgage holder from entry.

[5] Robishaw does not appear to allege that the damage to his property when the basement filled with water constituted a conversion. In any case, such a claim would be unavailing. A conversion is an "intentional exercise of dominion or control" over property. Restatement (Second) Torts § 222A (emphasis added). *See id.* § 226. No evidence has been offered that the damage to Robishaw's property in the basement was intentional. Conversion does not lie from negligent acts or omissions. *Id.* § 224.

9

premises by virtue of the foreclosure judgment and public sale and had the right to change the locks. Before Robishaw can assert a conversion claim for barring him from his possessions, he would have had to make a demand for their return and received a refusal. The summary judgment record indicates that Robishaw communicated to Hamilton to complain after the flooding of the basement and that a lawyer acting on Robishaw's behalf communicated with Wells Fargo after the locks were changed. *See* Hamilton SMF ¶ 43; Wells Fargo SMF ¶ 35. Construing these facts in the light most favorable to Robishaw, the court might be able to infer that some sort of demand was made. What is entirely absent, however, is any evidence of a refusal.[6]

In addition, the undisputed evidence is that the changing of the locks did not prevent Robishaw from obtaining access to his property. He entered the house via a window on the same day and then changed a side door lock to obtain continued access. Whether a conversion has occurred depends on the seriousness of the interference. *See* Restatement § 222A(2). A short-term lack of access – unaccompanied by any refusal to release the property – does not constitute a conversion. *See id.* comment d, illustration 12 ("A takes possession of a house and finds in it some of B's furniture. In order to keep out intruders, A changes the locks on the doors, as a result of which B, coming to get his furniture, is prevented from obtaining it for one day, until he can find A and get the keys. This is not a conversion.").

With respect to Robishaw's claim of conversion with respect to property placed out on the lawn, the undisputed facts indicate that this occurred after two letters had been sent advising Robishaw to reclaim his property or it would be disposed of. *See* Wells Fargo SMF ¶¶ 32-34 (admitted). Advising Robishaw to reclaim his property did

---

[6]  As far as the court can tell, defendants would have readily assented to any request by Robishaw that he be allowed to remove his property.

10

not constitute an exercise of dominion or control over the property; it instead constituted the opposite – an acknowledgement that Robishaw was entitled to assert dominion and control over the property and a request that he do so. When Robishaw did not reclaim his property, that property was apparently treated as abandoned. Under the circumstances that did not constitute a conversion.

As discussed below, however, treating the property as abandoned may have constituted a negligent assumption and placing property out on the lawn may have violated the duty of a landowner to safeguard property left by a former occupant.

6.    Negligent Destruction of Property

If defendants are entitled to summary judgment on claims of conversion, there remains the issue whether there is a factual dispute for trial on Robishaw's claim for negligent destruction of property. This claim, in the court's view, could include any negligence resulting in damage to property in the flooded basement, any negligence in treating Robishaw's property as abandoned in the fall of 2008, and any failure by Wells Fargo or its agents to properly safeguard belongings left on the premises.[7]

On this issue, leaving aside for a moment the issue of whether there is sufficient evidence to demonstrate that the named defendants – as opposed to other actors – may have been responsible for any alleged negligence, the court concludes that Robishaw has demonstrated disputed factual issues for trial. Specifically, the summary judgment record contains facts from which it could be concluded that defendants were aware of the presence of Robishaw's belongings at 5 Shady Lane, facts demonstrating a dispute

---

[7] If Robishaw were to prevail on such a claim, his damages would consist of (a) the fair market value of the damaged property less any salvage value or (b) in approximate circumstances, the cost of repairs. *See* Restatement (Second) Torts §§ 927, 928(a). These are the same damages which could be obtained for conversion.

as to whether Robishaw had abandoned that property by the fall of 2008, and facts from which it could be concluded that the property in question was damaged as a result of negligence.

In this respect, violation of a statute may constitute evidence of negligence, and the court concludes that the provisions of 14 M.R.S. § 6013 and 33 M.R.S. § 1954(2) were applicable in this case. On its face § 6013 applies to property that remains after a tenant has vacated a "rental unit." 5 Shady Lane was not a rental unit. However, 33 M.R.S. § 1954(2) is not limited to rental units, but applies to "landlords" and "tenants." The court interprets "tenant" for purposes of § 1954(2) to include tenants at sufferance. Section 1954(2) then incorporates by reference the provisions of § 6013 with respect to unclaimed property worth less than $750.

In this connection, it bears emphasis that § 6013 governs the treatment of unclaimed property in cases where a writ of possession has been obtained and served. *See* 14 M.R.S. § 6005 (when a writ of possession has been served and defendant fails to remove himself or his possessions within 48 hours, defendant is deemed a trespasser "and defendant's goods and property are deemed by law to be abandoned and subject to section 6013"). If section 6013 applies where a writ of possession has been served, it is difficult to determine why it would not also apply where – as in this case – a writ of possession had issued but service had been unsuccessful.

The court has previously concluded that service of the writ was unnecessary to evict the Robishaws because the Robishaws vacated the premises on their own and took up full time residence elsewhere. However, that does not relieve defendants of any duty they had to take reasonable measures to safeguard property that had been left behind.

12

One other issue remains to be considered on this count of the complaint. Hamilton has come forward with evidence that, with respect to the flooded basement, he did not shut off the power and did not instruct anyone to shut off the power. Hamilton SMF ¶ 38.[8] There is evidence in the record that Hamilton hired a vendor to winterize the property, but Hamilton testified, without contradiction, that he did not think winterization included shutting off power. Robishaw SMF Additional Facts ¶¶ 10, 12, 14. These facts are insufficient to raise a disputed issue for trial as to Hamilton's responsibility for the power shutoff or to create any basis to conclude that – even if there were evidence that the vendor was responsible for shutting off the power – Hamilton was responsible for the vendor's actions under principles of agency law.

There is also no evidence that Hamilton bore responsibility for the placement of Robishaw's property on the lawn in the fall of 2008. In fact, when it was reported to Hamilton that items were being moved out of the garage, the undisputed evidence is that Hamilton stated that the items should be put back in the garage. Hamilton is therefore entitled to summary judgment on Robishaw's negligent destruction of property claim.

As to the other defendants, however, the summary judgment record is sufficient to create a factual dispute on the property damage claim. First, as noted above, the court concludes that a property owner retains responsibility for property left on the premises by a former occupant pursuant to 33 M.R.S. § 1954(2) and 14 M.R.S. § 6013. On this record it appears that Wells Fargo or AHMS as its agent were advised in February 2008 that Robishaw's belongings remained on the premises. At a minimum, Wells Fargo (and AHMS as its agent) was required to take reasonable measures with

---

[8] Robishaw denied this assertion in Hamilton's SMF but did not offer any evidence to the contrary except his own surmise or assumption, which does not constitute admissible evidence. *See* Robishaw Response to Hamilton SMF ¶ 38-39.

respect to that property and not negligently or intentionally subject it to damage. Even if the actual damage to Robishaw's property resulted from the acts of an entity that arguably was an independent contractor (such as Field Asset Services), a jury could find that Wells Fargo and AHMS were negligent in not taking some affirmative measures to safeguard the belongings left behind by the Robishaws.

7.      Negligent Infliction of Emotional Distress

Robishaw did not, in his opposition to the motions for summary judgment, respond to defendants' arguments that he is not entitled to assert an emotional distress claim under the circumstances of this case. Because he has not opposed the dismissal of that claim, defendants' motion for summary judgment will be granted on that issue. In addition, the court is not aware of any authority for the proposition that parties may be entitled to recover for emotional distress resulting from property damage.

8.      Punitive Damages

Robishaw's argument that he is entitled to punitive damages is based on the theory that violations of 14 M.R.S. § 6030 (unfair rental contracts) are declared to be unfair trade practices, and Robishaw argues this entitles him to a punitive damage remedy under 5 M.R.S. § 213. However, no violation of § 6030 has been alleged in this case and the undisputed facts provide no basis for such a claim. In addition, even if the Unfair Trade Practices Act were applicable, that statute authorizes suits for "actual damages, restitution and [other] equitable relief." 5 M.R.S. § 213(1). It does not provide for punitive damages.

Moreover, although Robishaw's tort claim for negligent destruction of property survives, the Law Court has held that, in appropriate cases, summary judgment may be

14

granted dismissing punitive damage claims if the court concludes that the alleged conduct does not meet the applicable requirements for such claims as a matter of law. *E.g., Gayer v. Bath Iron Works*, 687 A.2d 617, 622 (Me 1996). *See Boivin v. Jones & Vining Inc.*, 578 A.2d 187, 189 (Me. 1990). In this case Robishaw has not advanced evidence generating a disputed issue for trial as to whether the alleged acts or omissions by Wells Fargo and AHMS were motivated by ill will or were so outrageous that ill will should be implied. *Id.*[9] Accordingly, summary judgment is granted dismissing Robishaw's punitive damage claims.

The entry shall be:

Summary judgment is granted to defendants Wells Fargo and American Home Mortgage Servicing on plaintiff's claims for illegal eviction, breach of warranty of habitability, breach of warranty of quiet enjoyment, trespass, conversion, negligent infliction of emotional distress, and punitive damages. As against Wells Fargo and American Home Mortgage Servicing, plaintiff's claim for negligent destruction of property remains for trial.

Summary judgment is granted to defendant Hamilton on all counts of the complaint.

The clerk is directed to incorporate this order on the docket pursuant to Rule 79(a).

DATED:     May _25_, 2010

_____

Thomas D. Warren
Justice, Superior Court

---

[9]  In this respect it bears emphasis that it is undisputed that Robishaw's property was not put out on the lawn until after he had been sent two letters advising him to reclaim the property or it would be disposed of. As a result, defendants' alleged actions cannot be found to rise to the level of outrageous conduct necessary to support punitive damages.

DEREK ROBISHAW  - PLAINTIFF

Attorney for: DEREK ROBISHAW
ROBERT ANDREWS  - RETAINED 05/05/2009
ROBERT ANDREWS ESQ
PO BOX 17621
PORTLAND ME 04112


vs
WELLS FARGO BANK NA - DEFENDANT
3 ADA
IRVINE CA 92618
Attorney for: WELLS FARGO BANK NA
MARK E PORADA  - RETAINED 05/13/2009
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101

AMERICAN HOME MORTGAGE SERVICING - DEFENDANT
ONE PORTLAND SQUARE
PORTLAND ME 04101
Attorney for: AMERICAN HOME MORTGAGE SERVICING
MARK E PORADA  - RETAINED 05/13/2009
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101

BRYCE HAMILTON-JUDG. 5/10  - DEFENDANT
53 BAXTER BLVD
PORTLAND ME 04101
Attorney for: BRYCE HAMILTON-JUDG. 5/10
JONATHAN PIPER  - RETAINED 05/12/2009
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

Attorney for: BRYCE HAMILTON-JUDG. 5/10
ROY PIERCE  - RETAINED 05/12/2009
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

COLDWELL BANK RESIDENTIAL REAL ESTATE   THIRD PARTY DEFENDANT

Attorney for: COLDWELL BANK RESIDENTIAL REAL
ESTATEERCE  - RETAINED 11/06/2009
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

Attorney for: COLDWELL BANK RESIDENTIAL REAL
ESTATEAN PIPER  - RETAINED 11/06/2009

**DOCKET RECORD**