ENTERED AUG 0 8 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-13-75
TDW-CUM-07-10-14

STATE OF MAINE
Cumberland. ss. Clerk's Office

SYBIL McCARTHY, et al,

Plaintiffs,

v.

JAMES FISHER, et al,

Defendants.

JUL 1 1 2014

**RECEIVED**

ORDER

Before the court is a motion by defendants James Fisher and Northeast Civil Solutions Inc. (NCS) for summary judgment dismissing claims by plaintiffs Sybil and Edward McCarthy based on defendants' alleged failure to obtain a DEP permit necessary for the construction of a residence in the Higgins Beach area of Scarborough.[1]

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law,

---

[1] Sybil McCarthy is known as Robin McCarthy and will be referred to as Robin in this order.

summary judgment should be granted. <u>Rodrigue v. Rodrigue</u>, 1997 ME 99 ¶ 8, 694 A.2d 924.

Criticism can justifiably be directed at both parties' Rule 56(h) submissions in this case. Defendants' original Rule 56(h)(1) statement of material facts consisted of 13 pages and 80 paragraphs. Plaintiffs then filed a 62-page Rule 56(h)(2) response, which included 122 paragraphs of additional factual assertions that plaintiffs contended raised disputed issues for trial, even though most of the same factual disputes in question had already been identified in response to defendants' original Rule 56(h)(1) statement. Defendants then filed a 112 page reply statement of material facts under Rule 56(h)(3. Not inconsiderable portions of those lengthy submissions – on both sides – consist of the kind of quibbling and pettifoggery that does not assist the court.[2]

Ultimately, however, although the parties' statements of material facts are far from "short and concise" as required by Rule 56(h), the court can discern the relevant factual and legal disputes presented by the pending motion.

## Breach of Contract – Count II of the Amended Complaint

The major dispute between the parties centers on whether Fisher and NCS entered into a contract with the McCarthys to obtain any necessary DEP permits and approvals for the construction of the residence.[3] A DEP permit was belatedly found to be necessary because of the location of the residence in an erosion hazard area, and plaintiffs allege that this required costly modifications to the residence.

---

[2] Parties moving for summary judgment and parties opposing summary judgment should both be reminded that summary judgment procedure is best used for rifle shots rather than howitzers or blunderbusses.

[3] There is a separate issue whether the McCarthys contracted with both Fisher and NCS or only with NCS. There is also a separate issue whether Edward McCarthy, as opposed to his wife Robin, is entitled to assert claims in this action. Both of these issues are addressed below.

2

Defendants rely on a written contract between NCS and Robin McCarthy which provides – in sections entitled "Scope of Services" and "Special Conditions" – for NCS to prepare surveys and apply for zoning variances but does not contain any mention of DEP permits or approvals. The McCarthys rely on a written document signed by Robin McCarthy on the same date as the contract authorizing NCS to sign any applications, permit requests, and other paperwork "in conjunction with obtaining final municipal and state approvals." The problem with the McCarthys' argument is that even if the authorization form is treated as part of the contract, it does not contain any promise or undertaking by NCS to obtain DEP permits or approvals.

Nevertheless, the contract does not contain an integration clause. Moreover, it provides that "[a]ny services provided beyond this scope of services are billed at an hourly rate." It therefore contemplates the possibility that NCS will perform services under the contract beyond the survey and zoning variance work expressly provided for. The existence of the authorization form and the deposition testimony of Robin McCarthy and Raymond LaBonte clearly demonstrate the existence of a factual dispute for trial as to whether, as part of the contract, Fisher on behalf of NCS orally agreed to obtain the necessary DEP permits.

Defendants point to a provision in the written contract that provides that the contract can only be amended in a writing signed by both parties. However, because of the contractual language quoted above, which contemplates that NCS may provide services not enumerated in the contract, no amendment of the contract would have been required for NCS to have undertaken to perform additional services, including services to obtain any necessary DEP permits and approvals as alleged by plaintiffs.[4]

---

[4] At a minimum, the contract is ambiguous on that issue, and plaintiffs would be entitled to offer parol evidence as to the alleged agreement by NCS to obtain the DEP permit.

3

Summary judgment is therefore denied on plaintiffs' claim for breach of contract in count II of the amended complaint.

Professional Negligence – Count I of the Amended Complaint

Even in the absence of any express warranties as to the quality of the work to be performed, a party undertaking to perform professional services is made subject to an implied warranty that the work will be performed in a reasonably skillful and workmanlike manner and in accord with the standard of care applicable to members of the profession. See, e.g., Gosselin v. Better Homes Inc., 256 A.2d 629, 639-40 (Me. 1969). NCS argues that even if the McCarthys establish that NCS agreed to obtain a DEP permit, the McCarthys cannot prevail on their claim of professional negligence because they have not offered the expert testimony necessary to support such a claim.

Plaintiff have designated an expert who has testified as to the relevant standard of care[5] although he has not offered testimony that NCS violated the standard of care. Nevertheless, so long as the standard of care is established by expert testimony, plaintiffs may proceed on their claim of professional negligence if, under the specific circumstances in question, the determination of whether there was a deviation from the established standard of care is an issue that is sufficiently obvious that it can be decided by the finder of fact without resort to expert testimony. See Department of Human Services v. Earle, 481 A.2d 175, 179 (Me. 1984). A review of the summary judgment record demonstrates that plaintiffs have made a sufficient factual showing to raise a disputed issue of fact for trial as to whether there was an obvious deviation from the

---

[5] The McCarthys also argue that defendants have admitted the relevant standard of care in their answer. Paragraph 44 of defendants' answer, however, only agrees that there are professional standards of care and does not adopt plaintiffs' formulation of those standards.

4

standard of care, and the court cannot conclude that NCS is entitled to judgment as a matter of law on plaintiffs' professional negligence claim.

In addition, in response to hypotheticals posed by plaintiffs' counsel, plaintiffs' expert has offered opinions that certain alleged actions would, if proven, constitute deviations from the standard of care. Mooney Dep. 13-14, cited in Plaintiff's SMF ¶ 59. That alone is sufficient to preclude summary judgment on plaintiffs' professional negligence claim.[6]

## Unfair Trade Practice Claim – Count III of Amended Complaint

To the extent that plaintiffs are arguing that NCS violated the Unfair Trade Practice Act (UTPA), 5 M.R.S. §§ 207 and 213(1), simply by virtue of alleged breaches of contract and alleged professional negligence, the court disagrees. However, plaintiffs have submitted evidence demonstrating that there is a disputed issue for trial as to whether Fisher repeatedly made false representations with respect to his progress in obtaining a DEP permit. Whether those representations were made and, if so, whether those representations constituted "unfair or deceptive acts or practices in the conduct of a trade or business" within the meaning of 5 M.R.S. § 207 are issues for trial.

## Promissory Estoppel – Count IV of the Amended Complaint

Promissory estoppel is a doctrine that is designed to allow enforcement of a promise in situations when there has been detrimental reliance but no contract exists, usually because of a failure of consideration. See Restatement (Second) of Contracts, Chapter 4, Topic 2 ("Contracts Without Consideration") § 90(1). The difficulty with

---

[6] There is an issue as to whether plaintiffs' expert can offer opinions as to the standard of care with respect to surveyors or only with respect to engineers, but that will have to be sorted out at trial.

5

plaintiffs' claim of promissory estoppel in this case is that plaintiffs are not seeking to enforce an alleged promise from which NCS has walked away. Rather they are suing NCS based on the theory that NCS unreasonably delayed in performing its contractual obligation to submit an application for DEP approval and was professionally negligent in performing its contract.

Plaintiffs' promissory estoppel claim may have been asserted to counter defendants' argument that there was no consideration for any contract to obtain DEP approvals. As noted above, however, the written contract expressly provides that services provided beyond the scope of the written contract shall be billed at an hourly rate. A promise to make future payment for services constitutes consideration. Restatement (Second) of Contracts §75. As a result, if plaintiffs are successful in proving that Robin McCarthy's contract with NCS included an undertaking by NCS to obtain DEP permits or approvals, that aspect of the contract will not fail for lack of consideration.

In any event, plaintiffs' promissory estoppel claim is inapposite and does not present any disputed issues for trial. Defendants' motion for summary judgment is granted with respect to that claim.


Implied Contract/Quantum Meruit – Count V of the Amended Complaint

Count V of the amended complaint seeks recovery for "implied contract/quantum meruit." Quantum meruit, which is a theory under which a contract is implied,[7] allows recovery when (1) services have been rendered by the defendant to the plaintiff (2) with the knowledge and consent of the defendant (3) under

_____

[7] See Paffhausen v. Balano, 1998 ME 47 ¶ 6, 708 A.2d 169.

6

circumstances which make it reasonable for the plaintiff to expect payment. <u>Dinan v. Alpha Networks Inc.</u>, 2013 ME 22 ¶ 20, 60 A.3d 792.

In this case a quantum meruit theory is singularly inapplicable because there is absolutely no evidence that the Murphys provided any services to the defendants. Moreover, plaintiffs have offered no legal authority for the proposition that they can hold defendants liable on some kind of implied contract theory if they cannot prove that defendants agreed to undertake the task of obtaining any necessary DEP permits and approvals as part of the NCS contract with Robin McCarthy.

Summary judgment shall therefore be entered for defendants on Count V of the complaint.

## Liability of James Fisher as Opposed to Northeast Civil Solutions Inc.

Plaintiffs' contract and professional negligence claims are based on a contract between Robin McCarthy and NCS. That contract contemplates that additional services not specified in the contract may be provided. Although James Fisher signed the contract as President of NCS, that does not make him personally liable on the contract. Moreover, with one exception, plaintiffs have not offered any evidence that Fisher ever agreed to contract with Robin McCarthy in his individual capacity.[8]

The exception is that in paragraph 51 of the answer to the amended complaint, "defendants" (plural) admitted the allegation that they had a valid and enforceable contract, while denying that the contract involved obtaining DEP permits and approvals. This is a very slim reed but is probably enough of a basis to deny Fisher's

---

[8] Robin McCarthy's deposition testimony that she contracted with Fisher as well as with NCS is not sufficient. Notwithstanding Ms. McCarthy's belief that she was contracting with Fisher, there would have to be some evidence that Fisher made some statement or otherwise manifested his intent to be a party to the contract.

7

motion for summary judgment on plaintiffs' breach of contract and professional negligence claims.

Moreover, liability under the Unfair Trade Practices Act attaches to any "person" who engages in conduct that constitutes an unfair or deceptive act or practice. 5 M.R.S. § 213(1). All of plaintiffs' UTPA claims are based on false and deceptive representations allegedly made by Fisher personally. If those claims are proven, Fisher as well as Northeast Civil Solutions would be liable under the UTPA.

## Status of Edward McCarthy

The undisputed evidence is that Robin McCarthy was the only person who signed the contract and that she had all of the discussions with Fisher upon which plaintiffs base their claims that Fisher and Northeast Civil Solutions undertook to obtain any required DEP permits and approvals. Edward McCarthy did not sign the contract and was not a party to the alleged May 2011 agreement that defendants' services would address DEP issues. Defendants' SMF dated March 31, 2014 ¶¶ 10-11.[9] Accordingly, defendants are entitled to summary judgment as against Edward McCarthy on Counts I and II of the amended complaint.

The only remaining issue is whether Edward McCarthy may join his wife in asserting UTPA claims. In order to bring a claim under the UTPA, a plaintiff must be a person who "purchases or leases goods, services or property . . . for personal family or household purposes." 5 M.R.S. § 213(1). In this case the undisputed evidence is that it was Robin McCarthy, and not Edward McCarthy, who purchased services from NCS

---

[9] Although those paragraphs were qualified in plaintiffs' SMF, the qualifications do not raise any genuine factual disputes as to the status of Edward McCarthy as a non-contracting party.

8

and allegedly from James Fisher. This excludes Edward McCarthy from recovery under the UTPA.

Summary judgment is therefore granted dismissing all claims asserted on behalf of Edward McCarthy. Plaintiff Robin McCarthy's claims on counts I, II, and III of the amended complaint remain for trial.

The entry shall be:

As to plaintiff Sybil (Robin) McCarthy, defendants' motion for summary judgment is denied as to counts I, II, and III of the amended complaint but is granted with respect to counts IV and V. As to plaintiff Edward McCarthy, defendants' motion for summary judgment is granted as to all counts of the amended complaint.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: July _10_, 2014

Thomas D. Warren
Justice, Superior Court

9

CL_RK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

PLAINTIFFS ATTORNEYS

THIMI MINA ESQ
ALFRED FRAWLEY IV, ESQ
MCCLOSKEY MINA & CUNNIFF LLC
12 CITY CENTER
PORTLAND ME 04101

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

DEFENDANTS ATTORNEY

ANDREW SPARKS ESQ
DRUMMOND & DRUMMOND
ONE MONUMENT WAY
PORTLAND ME 04101